## Wood and others *against* Edwards and others.

THIS was an action of *assumpsit*, brought to recover the value of a quantity of plaister stone, delivered by the plaintiff, to the defendants, tried before Mr. Justice *Van Ness*, at the *Cayuga* circuit, in *July*, 1820. The declaration, which was entitled of *January* term, 1820, contained the usual counts for goods sold and delivered, and money accounts, and on an account stated. The defendants pleaded the general issue, and the statute of limitations.

The plaintiffs gave in evidence an agreement under seal, dated *August* 13, 1813, between the plaintiffs and *Edwards*, one of the defendants, by which the plaintiffs agreed to substitute for an existing agreement between the same parties, was drawn up, and sent to the defendant, who approved of it, and promised to execute it; but it was not executed by the plaintiff: it was held to be inoperative, for want of consideration and of mutuality.

Whether, if the complete performance of a contract to deliver goods, is prevented by an act of the government, and the defendant refuses to accept the residue of the goods, after the time stipulated had past, the plaintiff can sue for and recover for the part he had delivered, as if the contract were rescinded? *Quære.*

*A plaintiff cannot recover on an implied assumpsit for the value of goods delivered by him to the defendant, where there is an existing written contract, under seal, and in part performance of which the goods were delivered. What amounts to. a waiver or rescinding of a contract. Where an agreement, intended as a*

sell and deliver to *E.* or his assigns, at or near the head of the *Cayuga Lake*, on or before the first day of *February* then next, 800 tons of plaister stone, and to cause the same to be sufficiently secured from the weather; and *E.* agreed and promised to pay the plaintiffs, on or before the first day of *June* then next, five dollars per ton for the plaister, and half the expense of weighing it, &c. It was further agreed between the same parties, that the defendant *E.* should, on or before the delivery of any part of the plaister, give to the plaintiffs approved security, for the payment of the sum of four thousand dollars, at the time above mentioned, at the store of *Wood* and *Hoskins*, in the village of *Union Springs*. The plaintiffs also gave in evidence an instrument in writing, executed by *Bement* and *Keeler*, the other defendants, under their hands and seals, dated *September* 2, 1813, by which they covenanted and agreed to be jointly bound and held with the defendant *E.* to fulfil the contract, first above mentioned, on the part of *E.*, and to be considered as parties to that agreement, and to execute the same as soon as an opportunity would permit; and they further agreed to be concerned with *E.* in the contract, and thereby bound themselves to the fulfilment thereof.

It was admitted, that soon after the 27th of *September* 1813, the plaintiffs commenced the delivery of the plaister to the defendants, and that in the course of about a month following, they delivered to the defendants, 324 tons and three fourths, parcel of the 800 tons so agreed to be delivered.

The plaintiffs also gave in evidence a letter from *Edwards*, dated *Berkshire*, *Sept.* 20, 1813, in which he writes " Mr. *Asa Bement* has concluded to become interested with me in the contract for plaister which I entered into with you on the 13th of *August* last. I will inclose a line from him. Our company now is, *A. Bement, Lewis Keeler,* and myself. We wish you to write as to the security I, by the articles, was to make; whether Mr. *Bement* and Mr. *Keeler* will be approved of by you, as sufficient, and fix a time and place where we shall make it. We wish, if you are willing, that you would now determine whether we

take the plaister at five dollars, or you be interested with us in taking it through, as, by our articles, you have a right to do, if you choose," &c. On the 15th of *September,* 1813, *Bement* wrote a letter to the plaintiffs, stating, that he had agreed to become interested with *Edwards* in his contract with the plaintiffs. It appeared that about the 1st of *January,* 1814, the terms of a contract between *Wood* and *Edwards,* were reduced to writing, a copy of which was taken by *E.* for the purpose of consulting his partners in *Berkshire,* and if they approved of it, he was to inform the plaintiffs thereof. This contract, which was unexecuted, was produced, under a notice given to the defendants for that purpose. It purported to be between two of the plaintiffs, *W.* and *H.,* and the defendants *E.* and *B.,* and provided an entire new agreement, fixing the price of the plaister at three dollars per ton, and a partnership between the parties in the transportation and sale of it. The plaintiffs next gave in evidence a letter from *Edwards,* dated *January* 10th, 1814, to *W.* and *H.,* stating, that *B.* and *K.,* with himself, had agreed to accept the proposal of the settlement of their plaister contract, made by Mr. *Wood* to him, that day, a week ; and that he, *E.,* expected to meet the plaintiffs at the *Salt Springs,* on *Monday* the 17th, to exchange writings, &c. Another letter from the defendants to the plaintiff, dated *January* 29, 1814, stated, that they were willing to settle their differences by arbitration. On the 15th of *February,* following, *W.* offered to deliver to the defendants all the plaister he had at the head of the lake, being two or three hundred tons, but the defendants refused to accept it.

From the evidence on the part of the defendants, it appeared that after the proposed contract in *January,* 1814, *Wood* and *Edwards* differed in their construction of it, which was, probably, the reason why it was not executed. Evidence, as to some other facts, was also given, which it is unnecessary to state. The jury found a verdict for the plaintiff, for two thousand three hundred and fifty-eight dollars and thirty-seven cents, being the value of three hundred and twenty-four tons and three fourths of plaister, actually delivered, at five dollars per ton, with interest, subject to the

ALBANY,        opinion of the Court, on a case containing the facts above
August, 1821.  stated.

WOOD
v.
EDWARDS.       *Oakley* and *S. Wood* for the plaintiffs.    1. Where a party
has advanced money, or done any act, in part performance
of an agreement, and the other party refuses to proceed and
fulfil all his stipulations according to the terms of the con-
tract ; (13 *Johns. Rep.* 35. 94. 359.    12 *Johns. Rep.* 165.)
*or* 'where something is to be done. by each party, and one
of them, by his neglect or refusal, prevents the other party
from executing his part of the contract ; (7 *Term Rep.* 181.
14 *Johns. Rep.* 326.    11 *Johns. Rep.* 525.    2 *Comyn on
Cont.* 84, 85.) *or* where by the terms of the contract, one
party has the power to rescind it, and does so, and where the
defendant, afterwards, or both parties, assent to its being re-
scinded : in all these cases, the party who has advanced the
money or done the act, may treat the contract as rescinded,
or put an end to, and bring his action to recover back the
money advanced, or for the act done, in an action of as-
sumpsit. (1 *Term Rep.* 133.    5 *Johns. Rep.* 85.    12 *Johns.
Rep.* 274.    13 *Johns. Rep.* 53.    14 *Johns. Rep.* 330.    15
*Johns. Rep.* 224.    7 *Johns. Rep.* 132.    10 *Johns. Rep.* 37.
*Doug.* 23.    1 *Bos. and Pull.* 354.    3 *Johns. Cases*, 60.    11
*Johns. Rep.* 441. 525.) And this may be done although the
contract be by deed, or writing under seal. (1 *Caines' Rep.*
47.    13 *Johns. Rep.* 359.    14 *Johns. Rep.* 336    2 *Johns.
Ch. Rep.* 526.    3 *Johns. Ch. Rep.* 23.    17 *Johns. Rep.* 363.
18 *Johns. Rep.* 219.) But one party *alone* cannot rescind
the contract.

The defendants, then, we contend, have put an end to the
contract of the 13th of *August*, 1813, either by not giving
approved security for 4000 dollars ; or by refusing to accept
a performance of the contract when it was offered ; or by
inducing the plaintiff to suspend the delivery after the time,
and then refusing to accept the plaister.    The giving of se-
curity was a condition precedent on the part of the defend-
ants ; and not having been performed, the plaintiffs were at
liberty, at any time, to abandon the performance on their
part.    No security was given or offered, unless it should be
said that the instrument executed by *Bement* and *Keeler*

was such security. But that instrument was not made, or intended, or accepted, as security. *B.* and *K.* merely engaged to become parties to the original contract, and, of course, to assume its obligations, and to sign it at a future time. The agreement of the 27th of *September*, executed by *B.* and *K*, pursuant to their covenant, contained in the former one, is no evidence. that it was accepted as- such security. It may, perhaps, be said that the delivery of part of the plaister is evidence either of a performance of the condition precedent, or a waiver of it. But the presumption of a performance is rebutted ; for the defendants do not pretend that there was any other security than the instruments of the 2d and 27th of *September*, and the evidence is not sufficient to show they were given as such. Besides, after attempting to show a performance, the defendants are not at liberty to insist that it was waived; nor where the performance is secured by a deed, can it be waived by parol. (*Phillip's Evid.* 498. 17 *Johns. Rep.* 169.)

Again ; the contract was put an end to, by the defendants refusing to receive the plaister when tendered. It cannot be objected, that the offer to perform was after the day; for if the party insists on an entire performance as a condition precedent to his paying money, he cannot object to performance after the day ; besides, the refusal to accept was not put on that ground. (12 *Johns. Rep.* 274. 5 *Johns. Rep.* 85. 3 *Johns. Cases*, 243. *Doug.* 684.) Nor can it be objected that the quantity offered was not enough, for the defendants refused to receive any at all.

2. Again, we contend, that there was a subsequent new agreement entered into between the parties, which was substituted in the place of the original contract, which was thereby extinguished. By this new contract the. time of performance was extended; it was to be delivered in parcels, at any time, during the continuance of sleighing. The defendants are precluded by the offer and refusal, as well as by the agreement to submit to arbitration, from denying the new contract. But whether the offer was made on the old or on the new contract, the defendants by refusing to receive any more plaister, sufficiently declared their

election to put an end to any contract relative to plaister, existing between the parties.

3. The plaintiffs were excused from any further performance, in consequence of the act of government. All their boats at the head of the lake were taken away by the officers of government, so that it was impossible for the plaintiffs to transport the plaister. If the performance of a contract is rendered impossible by the act of government, the party must be excused. (2 *Mass. Rep.* 147. 13 *Johns. Rep.* 194. 2 *Bos.* and *Pull.* 291.)

4. This case is not within the statute of limitations. The plaintiffs' right of action did not commence, until they had elected to consider the original contract rescinded, and to proceed under the new agreement, which was not broken until *February*, 1814.

*J. A. Collier*, contra. 1. The plaintiffs have no right to recover on the general counts, in *assumpsit*, without showing a full performance of the original agreement on their part, and a non-performance on the part of the defendants. The plaintiffs must show either a waiver of the contract, or a right to waive it. (1 *Saund.* 320. *b.* 1 *Chitty's Pl.* 314. 1 *Hen. Bl.* 270. 278. 10 *Johns. Rep.* 203.) A part performance is not sufficient. (12 *Johns. Rep.* 165. 13 *Johns. Rep.* 56. 94. 14 *Johns. Rep.* 363. 13 *Johns. Rep.* 359.) The general rule on this subject is laid down by the Chief Justice, in *Ketchum* v. *Evertson* ; (13 *Johns. Rep.* 365.) that a party who has advanced money or done an act in part performance, and then stops short, and refuses to proceed to the ultimate conclusion of the agreement, the other party being ready and willing to proceed to fulfil his stipulations, according to the contract, is never suffered to recover for what he has advanced or done. (S. P. 3 *Johns. Ch. Rep.* 179. 1 *Salk.* 65. 6 *Term Rep.* 320.) Indeed, in the case of *Hulle* v. *Heightman*, (2 *East*, 145.) the Court of K. B. in *England*, went further, and decided, that a seaman who had contracted to go a voyage from *A.* to *B.*, and back again, and stipulated not to be entitled to wages until the end of the voyage, could not maintain a general *indebitatus assumpsit* to recover his wages, *pro rata*, as far as *B.*, though

he had been wrongfully dismissed from the ship, by the defendant. Even, if a full performance had been prevented by inevitable necessity, or the act of God, the plaintiffs could not recover for a part performance. The plaintiffs had no right to waive the contract. (12 *Johns. Rep.* 326. 363. *Doug.* 23. 18 *Johns. Rep.* 169. 1 *Term Rep.* 133.)

2. But it sufficiently appears, from the plaintiffs' own evidence, that the condition precedent on the part of *Edwards*, to give "approved security" for the payment of the money, was, in fact, fully performed, by procuring the covenant of *Bement* and *Keeler*, to that effect, which was accepted by the plaintiffs.

3. The original contract was not rescinded by the pretended new agreement of *January*, 1814, for it is without date or signature; it was not executed. If set up as an *accord*, it must be in writing, and be such as the defendant, as well as the plaintiffs, could enforce. The original contract being by deed, the substituted agreement must, also, be under seal. (1 *Chitty's Pl.* 237. 1 *Saund.* 276. *a.* n. 2. 2 *Wils. Rep.* 49. *Rob. on Frauds,* 202. note. *Com. Dig. Accord,* A. 1, 2. B. 2. 2 *Wils.* 86. 376. 2 *Saund.* 48. *a.* n. 1. *Com. Dig. Pleader,* 2, 3. 9. *Com. Dig. Defeasance,* C. *Phillips' Ev.* 444. 2 *Lev.* 234. 4 *Mass. Rep.* 443. 3 *Johns. Cas.* 246.) Besides, this new agreement was void for want of mutuality. (4 *Wheat. Rep.* 228. 4 *Johns. Rep.* 235. 1 *Chitty's Pl.* 297. 1 *Caines' Rep.* 594. 12 *Johns. Rep.* 190. 397. 3 *Term Rep.* 653. 1 *Johns. Ch. Rep.* 282. 370.)

4. The contract of the 13th of *August* was not waived. Being within the statute of frauds, it could not be waived by parol. (1 *Powell on Cont.* 425, 426. 15 *Johns. Rep.* 200. 203, 204. 1 *Johns. Ch. Rep.* 233. 1 *Eq. Cas. Abr.* 32.) But there was, in fact, no waiver by parol.

5. The tender of plaister to *B.* in *February*, 1814, cannot avail the plaintiffs; 1. because it was too late; 2. because it was less than the quantity stipulated to be delivered; 3. because it was tendered on the new agreement set up, and not on the original contract.

6. The failure of the plaintiffs to perform their contract arose from their own neglect, not from inevitable necessi-

ty. There is not sufficient evidence that their boats were taken away by government; and if that fact had been fully proved, it forms no *legal* excuse.

7. The claim of the plaintiffs is barred by the statute of limitations. More than six years have elapsed since the 324 tons of plaister were delivered. If the original contract was rescinded, then the plaintiffs should have sued on the new agreement.

SPENCER, Ch. J. delivered the opinion of the Court. (After stating the facts in the case.) It appears to us, that the contract of the 13th of *August,* 1813, was never given up, or rescinded. The defendant, *Edwards,* fulfilled the stipulation on his part. He gave the security according to the engagement, before any of the plaister was delivered. This security was accepted by the plaintiffs. This appears from the instrument of guaranty executed by *B. & K.,* which the plaintiffs themselves produced. They never objected to the responsibility of *B. & K.,* when asked by the defendant to inform him if they were satisfactory : and the plaintiffs went on, after this security was given, and delivered nearly one half of the whole quantity of plaister which they had contracted to deliver. It cannot be contended, then, that the plaintiffs did not approve and accept of *B. & K.* as security for *E.* under the contract.

The contract of *January,* 1814, was entirely inoperative; for although *Edwards,* in his letter, stated that he and the other defendants had agreed to it, yet he also stated that the contract was to be executed. *E.* was not bound by this unexecuted agreement, unless the plaintiffs were also bound, as most clearly they were not. The cases of *Tucker* v. *Woods,* (12 *Johns. Rep.* 190.) and of *Cook* v. *Oxley,* (3 *Term Rep.* 653.) decidedly show, that the proposition of *E.* to execute the new agreement was not binding on him, as well on the ground of a want of consideration, as a want of mutuality, since the plaintiffs, on their part, were not bound to execute the agreement.

It was thrown out, on the part of the plaintiffs, on the argument, that they were prevented from fulfilling the contract on their part, in consequence of their boats being impressed

by government, so as to render it impossible to deliver the plaister within the time limited by the contract. But as the fact, that they were so prevented, is not proved, it is not necessary to consider, whether it would be sufficient to excuse the non-performance.

These considerations are sufficient to dispose of this case; and to show, that the plaintiffs cannot recover on an implied *assumpsit*, when there is an existing written and sealed contract under which the plaister was delivered. The defendants are, therefore, entitled to judgment.

<div align="right">
ALBANY,
August, 1821.

<p align="center">Judgment for the defendants.</p>