(43 App. Div. 433.)

PEOPLE ex rel. FOGARTY v. YORK et al.

(Supreme Court, Appellate Division, Second Department. October 3, 1899.)

MUNICIPAL CORPORATIONS—SPECIAL POLICEMAN.

Under Greater New York Charter, § 280, providing that "each sergeant, roundsman and patrolman of the police force" of any town or village in the territory "included in the city of New York shall be members of the police force specified in the act," a special policeman appointed by a village, in the included territory, having no organized police force, and no fund for the maintenance of any police force, is not a member of the police force of the consolidated city.

Appeal from special term, Queens county.

Application by the people, on the relation of John Fogarty, against Bernard J. York and others, as police commissioners of the city of New York, for a peremptory writ of mandamus. From an order denying the application, the relator appeals. Affirmed.

The following is the opinion of the special term (GARRETSON, J.):

The relator's allegation that he was appointed a police officer of the village of Jamaica prior to January 1, 1898, and was acting as such on that day, when the Greater New York charter came into effect, is qualified by the record of the proceedings of the board of trustees of the village, which are incorporated in the papers submitted in opposition by the respondents, and particularly in the affidavit of Mr. Duncan McInnes. The statement of the record of the trustees, thus presented, is made affirmatively, and, not having been traversed by the relator, must be regarded as truly setting forth the facts. It is inferable therefrom that no "police force" had been established in the village, and the fact that no provision was made in the tax budget for 1897 for the salary of any police or the maintenance of a police department tends to confirm such inference. From September 2, 1897, the relator acted for the village as a special policeman, and performed occasional and not continuous duty, for which he was paid three dollars per day until October 19th, when, by resolution of the trustees, "the park committee were authorized to employ an additional policeman on the park property. John Fogarty was appointed as such, and furnished with the proper badge." Under the appointment last referred to, the relator was paid sixty dollars for November, and sixty-two dollars for December; being at the rate of two dollars per day. The foregoing constitutes substantially the entire record of relator's employment and compensation as a police officer of the village, so far as the same is disclosed by the minutes of the board of trustees. I am of the opinion that relator's police employment and service were special and individual, and arose under the general power

which the trustees might properly exercise as occasion required, and that inasmuch as the relator has not shown that the board of trustees had, prior to consolidation, established a police force, of which he was a member, and provided for its maintenance by taxation, a proper case has not been made out for the granting of the writ asked for. Section 280 of the Greater New York charter is as follows: "The captain, and each sergeant, roundsman and patrolman of the police force of the county of Richmond, or of any town or village in that part of the county of Queens included in the city of New York, as hereby constituted, shall be members of the police force specified in section two hundred and seventy-six of this act." The section refers to a "police force" existing and established as such, and was not intended to include a person acting under a special and casual appointment for the performance of a particular police duty. It cannot with propriety be claimed that the relator was the "police force" of the village, and, in the absence of evidence of associates, such must be the holding if the contention of the counsel for the relator is to be acceded to. In the determination of this motion I have not deemed it needful to consider the affidavits of the former trustees of the village, which are of doubtful competency, so far as they relate to unrecorded minutes of official acts of the board of which they were members. The motion for a peremptory writ of mandamus is denied.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Burt Jay Hymphrey, for appellant.
William J. Carr, for respondents.

WILLARD BARTLETT, J. Section 280 of the Greater New York charter provides as follows:

"The captain and each sergeant, roundsman and patrolman of the police force of the county of Richmond, or of any town or village in that part of the county of Queens included in the city of New York as hereby constituted, shall be members of the police force specified in section two hundred and seventy-six of this act."

Section 276 prescribes the composition of the police force of the consolidated city.

The relator claims to have been a policeman of the village of Jamaica at the time when these portions of the charter took effect, and as such to have been entitled to recognition as a member of the new force, under section 276. This recognition was denied him by the police commissioners, and the court at special term has held that they were right in their refusal to comply with his demand.

The statute under which the village of Jamaica was governed at the time of the relator's employment empowered the board of trustees to organize, at such time or times as they deemed the interests of the village required, "a sufficient body of police to suppress riots and preserve order," and to allow the police such compensation as they might deem just and reasonable. Laws 1855, c. 264. In order to ascertain the precise character of the relator's position in the service of the village, we must confine our attention to the undisputed facts which are disclosed by the record, without regard to the conclusions which the various affiants draw from those facts.

The minutes of the board of trustees of Jamaica show action as follows in respect to the employment of policemen: August 10,

1897, the passage of a resolution appointing a special policeman to patrol Fulton street from Ackroyd avenue to Flushing avenue every night and all night. September 2, 1897, the passage of a resolution that the salary of one Thomas Tevelin, as such special policeman, be fixed at the sum of $60 per month. September 2, 1897, the reception, reading, and placing on file of a petition asking for the appointment of the relator as a special policeman. September 14, 1897, the adoption of a resolution authorizing the placing of six policemen on duty for September 16, 1897,—that being the day of a firemen's parade in the village,—the same to be paid $3 a day. October 7, 1897, the audit of a bill of $3 in favor of the relator. October 19, 1897, the adoption of a resolution authorizing the park committee "to employ an additional policeman on the park property"; the minutes further reciting that "John Fogarty was appointed as such, and furnished with the proper badge." The minutes of the board of trustees also show the payment of warrants to John Fogarty for police service as follows: November 4, 1897, $22; December 2, 1897, $60; December 29, 1897, $62. It is to be observed, however, that in the village tax budget for 1897 no provision whatever was made for the maintenance of any police force.

From the facts which have been stated, I think the fair and reasonable inference is that the trustees of the village never organized or assumed to organize any such police force as was contemplated by section 280 of the Greater New York charter; and I agree with the learned judge who heard the case at special term that the relator's police employment was of a special character, which did not constitute him a patrolman, within the meaning and intent of that section. The term "special policeman" is ordinarily used to designate one who is not a member of a permanent and organized police force, but who merely engages to do temporary police duty in a particular place or on a special occasion. The petition for the relator's appointment asked only that he be made a special policeman, and the restriction of his functions to the park property showed that it was only as a special policeman that he was employed.

The case is not at all like that of People v. York, 33 App. Div. 573, 53 N. Y. Supp. 947. There it appeared, without contradiction, that the village of College Point, more than six months before the Greater New York charter took effect, was lawfully maintaining an organized police force, consisting of a captain, a sergeant, and six patrolmen. So far as the papers on the present application show, the nearest approach which Jamaica had to a police force consisted of Thomas Tevelin, a special policeman,—expressly so denominated in the resolution of appointment,—who was employed to patrol certain specified streets at a compensation equivalent to $2 a day, and John Fogarty, the relator, who was likewise simply a special policeman, employed to protect the village park property at a like rate. I cannot believe that the legislature intended to place these men permanently on the pay roll of the consolidated city. The police force of a village, to be transferable by the operation of section 280 of

the charter, had to be something more of an organization than appears to have existed in Jamaica.

For these reasons, and those given by Mr. Justice GARRETSON in his opinion at special term, I think the order appealed from should be affirmed. All concur.