THE PEOPLE ex rel. JOHN NUGENT, Respondent, v. THE BOARD OF POLICE COMMISSIONERS, ETC., Appellant.

The relator, a patrolman of the police force of the city of New York, was arrested by his superior officer on June 13, 1879, on a charge of felony, and was imprisoned until January 17, 1880, when he was acquitted on trial.   On that day he reported for duty.   On January twenty-four he was dismissed from the force.   In proceedings by *mandamus* to compel payment of his salary from the time of his arrest to that of his dismissal, defendant claimed that under the provision of the act of 1873, supplemental to the city charter of that year (§ 5, chap. 755, Laws of 1873), which provides that "any member of the police force who shall be absent from duty without leave for the term of five days shall    *   *   *    cease to be a member of the police force," the relator's title to the office ceased on June eighteenth.   *Held* (FOLLETT, Ch. J., BROWN and HAIGHT, JJ., dissenting), untenable; that an enforced absence, caused by an unjustifiable arrest and detention, as was the case here, was not within the intendment of the statute.

The authorities bearing upon the subject collated.

The trial court gave a money judgment against the defendant.   *Held*, error.

(Argued March 11, 1889; decided May 3, 1889.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, made March 2, 1887, which directed and affirmed a money judgment entered upon trial at Circuit of issues presented by a return to an alternative writ of *mandamus*, and which directed the issuing of a peremptory writ of *mandamus* commanding defendant to pay to the relator the amount of said judgment.

The facts are sufficiently stated in the opinion.

*David J. Dean* for appellant. The admitted absence of
the relator from duty without leave terminated his member-
ship of the police force on June 18, 1879. (Laws of 1873,
chap. 755, p. 1120, § 5.) Absence from duty without leave,
whether voluntary or involuntary, under the statute, terminates
membership. (Laws of 1882, chap. 410, § 385.)

*Albert Hessberg* for respondent. The relator's salary belongs
to him as an incident of his office, and so long as he holds it; and,
when improperly withheld, he may sue for and recover it.
When he does so he is entitled to its full amount, not by force of
any contract, but because the law attaches it to the office. (*Fitz-
simmons* v. *City of Brooklyn*, 102 N. Y. 526.) The relator
being a patrolman was an officer of the police force of the city
of New York, and the salary referred to in the city charter of
1873 (Laws of 1873, chap. 335, § 43) is incidental to the office,
to which, by reason of his title to the office, the incumbent
acquired a right. (*People ex rel. Ryan* v. *French*, 91 N. Y.
265; *Nichols* v. *McLean*, 101 id. 537; *McVeany* v. *Mayor,
etc.*, 80 id. 185; *Dolan* v. *Mayor, etc.*, 68 id. 274.)

PARKER, J. The relator, a patrolman of the police force
of the city of New York, was, on the 13th day of June,
1879, arrested by his superior officer, Captain Byrnes, of the
police department, and taken to a Police Court and there
committed to the tombs, where he remained until the 17th
day of January, 1880, on which day, after a trial under an
indictment charging him with the commission of a felony, he
was acquitted.

On the same day he reported for duty. Subsequently, and
on the twenty-fourth day of January, he was tried before the
board of police commissioners and dismissed from the force.
Nugent thereupon demanded payment of his salary as patrol-
man, from the date of his arrest to the time of the making of
the order dismissing him from the service, and the board of
police commissioners refusing to comply with such demand,
proceedings were instituted to compel payment, which have
resulted in the issuance of a writ of *mandamus*, by the Gen-

oral Term of the Supreme Court, directing payment to be made. In *Fitzsimmons* v. *City of Brooklyn* (102 N. Y. 536) the court lays down the rule that the salary of a patrolman "belongs to him as an incident of his office, and so long as he holds it." Whether or not he rendered any service during the time for which he claims compensation is unimportant. The sole question to be considered is, did the relator have title to the office of patrolman during the period for which he claims, or did he not? If he had title, he was entitled to his salary, otherwise not.

Article 7 of chapter 335 of the Laws of 1873, relates generally to the organization and discipline of the police force.

By section 41 of such article the board of police are empowered to prescribe the government and discipline of the department, and to hear charges which have been preferred against members.

Section 47 provides, among other things, that "unexplained absence, without leave, of any member of the police force for five days, shall be deemed and held to be a resignation of such member, and accepted as such." While section 55 empowers the board of police, in its discretion, on conviction of a member of the force of any legal offense or neglect of duty, * * * or absence without leave, to punish the offending party.

The board of police, therefore, were invested with the authority to determine when absence without leave was explained and when not explained. They could arbitrarily accept as an explanation any excuse, however frivolous, which the ingenuity of favorite members of the force might suggest. If held to be explained, it was still an absence without leave, and on conviction the offending party could be punished by reprimand, forfeiting pay for a specified time or dismissal from the force. The power to determine which of the methods of punishment authorized should be inflicted rested solely in the discretion of the board of police. This discretion the legislature subsequently saw fit to and did take away from the board of police by chapter 755 of the Laws of 1873, entitled "An act supplemental to the act entitled an act to reorganize

the local government of the city of New York, passed April 30, 1873." Section 5 of that act reads as follows: "Any member of the police force who shall be absent from duty without leave for the term of five days shall, at the expiration of said five days, cease to be a member of the police force."

The appellant contends that, under and by virtue of this section of the statute, the relator's title to the office ceased on the eighteenth. He was arrested on the thirteenth day of June, and it not appearing that leave of absence was granted, his term of office must be deemed to have ceased, as contended for by the appellant, unless his enforced absence under the command of the law shall be held not to be within the intendment of the statute. It is both unreasonable and unjust to the citizen to hold that in any case he is subject to a penalty imposed by law for non-performance of a duty when such performance, without fault on his own part, is prevented by law. It is far more agreeable to reason to construe such a statute as containing an implied undertaking on the part of the state that performance shall not be hindered or prevented by any legal authority within the limits of the state, and, as a necessary consequence, that when thus hindered and prevented the statute shall not operate as against the citizen or officer thwarted in the attempt at performance. The principle which justifies and demands such a construction of this statute, as will relieve the relator from the penalty of enforced non-performance, by the act of the law, is sanctioned by elementary writers and in adjudged cases. "When performance of a condition is prevented by the act of God or law, it is excused." (Coke on Litt. 20, 6 a; 3 Kent's Com. 471; 8 Bing. 231; Gilbert on Covenants, 472; 1 Parsons on Contracts, 524; Chitty on Contracts, 631.)

In the *People* v. *Bartlett* (3 Hill, 570) the defendant pleaded, in substance, that after entering into a recognizance for the appearance of a prisoner, such prisoner was arrested and committed to jail in another county, and there kept in confinement until convicted and sent to state prison. The plea was held to be a good answer to the action, the court, in the opinion,

saying : "It is a general principle of law that where the performance of the conditions of a bond or recognizance has been rendered impossible by the act of God or of the law, * * * the default is excused." This case has been cited with approval in a long line of cases in the several courts of this state.

In the case of the *Commonwealth* v. *Terry* (2 Duvall, 383), it was held that, in a proceeding against the surety upon a forfeited recognizance, it was a sufficient defense that the defendant, being a soldier in the Federal army, was refused a furlough, and by reason thereof was unable to appear in discharge of the recognizance. In the case of the *Commonwealth* v. *Webster* (1 Bush. 616), it was held that the defendant, having been arrested by a provost marshal and taken from the county where the prosecution against him was pending, the bail should not be made liable because he was deprived of the power to surrender the defendant by the United States officer. In *Commonwealth* v. *Overby* (80 Ky. 208) it was held that "although the bail was not deprived of his right to surrender the defendant, by the commonwealth, he was effectually prevented exercising that right by the United States government, and, in our opinion, it does not make any difference whether the non-appearance of the defendant, in compliance with the bail bond, be caused by the commonwealth or the United States government, for the authority of neither can be resisted. In *People* v. *Cook* (30 How. Pr. 110) the obligee, in a recognizance, enlisted as a soldier under a call of the president for troops and was unable to appear, the bond was declared forfeited, and judgment recovered against the surety. The judgment was reversed, the court, in the opinion, saying: "The officers of the state, acting under its authority, are thus shown by the answer to have detained the principal in the recognizance and prevented the performance of its conditions by the bail." The cases so far cited establish the doctrine that the People cannot recover on a bail bond, because of a forfeiture caused by the act of government or the authority of law.

SICKELS — VOL. LXIX.   32

In *Wolfe* v. *Howes* (20 N. Y. 197) the question under consideration was, whether an employe who had failed to complete his contract could recover on showing that failure to perform was not a voluntary act, and the court said : " The law gives a reasonable construction to all contracts. For instance, in the present case, did the parties intend that the contract should be binding on the plaintiff's testator in case of unavoidable sickness or death ? Or did they intend, and is it to be implied, that each should perform according to the contract, *Deo volente ?* "

In *Cohen* v. *New York Mutual Life Insurance Company* (50 N. Y. 610), plaintiff, by the occurrence of war between the states, was prevented from transmitting money for the payment of premiums due upon a policy of life insurance. At the close of the war she tendered the amount due for premiums, with the interest thereon, which the defendant refused to receive, claiming that the policies had become forfeited by non-payment. The court held that the contract was not dissolved, but suspended by the war, and, in the opinion, said : " There is a manifest distinction between mere impediments and difficulties in the way of the performance of a condition and an impossibility created by law or the act of the government." ( *Wood* v. *Edwards,* 19 Johns. 205 ; *People* v. *Bartlett,* 3 Hill, 570 ; *Wolfe* v. *Howes,* 20 N. Y. 197.)

The cases referred to establish the principle that, in matters of contract, a party may be relieved from the consequences of the obligation to perform when performance is prevented by the act of God, or the exercise of a superior power residing within the sovereignty of the state. The same principle has been held to relieve a party from the obligation imposed by statute.

In *Wilckens* v. *Willet* (1 Keyes, 521), a person admitted to the liberties of the jail was taken, by a warrant of the speaker of the house of representatives, without the state to show cause why he should not be punished for contempt. The judgment-creditor brought an action against the sheriff for an escape. The statute (2 R. S. 437, § 36) provided " that if any prisoner * * * shall go, or be at large without the boundaries of the liberties

1889.]   PEOPLE ex rel. NUGENT v. POLICE COMRS.   251

Opinion of the Court, per PARKER, J.

of such jail, without the assent of the party at whose suit such prisoner was committed, the same shall be an escape of such prisoner, and the sheriff shall be answerable, therefore, for such debt," etc. In that case, as in this, the statute contained, in terms, no exception whatever. The statute under consideration provides that absence " from duty without leave for five days " forfeits the office. In the case cited, the statute provided that going or being at large without the boundaries of the liberties of the jail "shall be deemed an escape," and the sheriff shall be liable, and the court held that it was not an escape, because, while he was actually without the jail liberties, he was so without by authority of law.

Upon the same principle it has been determined that taking a prisoner away from the jail liberties on a *habeas corpus ad testificandum* does not constitute an escape. (*Noble* v. *Smith*, 5 Johns. 357; *Hassam* v. *Griffin*, 18 Johns. 48; *Wattles* v. *Marsh*, 5 Cowen, 176; *Martin* v. *Wood*, 7 Wend. 132.) The relator was arrested by his superior officer upon a charge which the courts have determined to be unfounded, and thus precluded from discharging the duty which his office devolved upon him, and it would be a perversion of justice if the wrongful act of his superior officer should result in the forfeiture of his office.

We think that the principle deducible from the cases cited demands the holding that the unjustifiable arrest and detention of the relator (for unjustifiable such detention must be held to be upon the verdict of the jury), did not operate to divest him of his title to the office of patrolman. That his absence was in obedience to the command of the law, and not, therefore, within the intendment of the statute. It follows that the relator was entitled to his salary for the period claimed, and the defendant having refused to pay, *mandamus* was the proper remedy. The trial court erred in granting a money judgment against the defendant, and so much of the order of the General Term as affirms such judgment should be reversed. The order of the General Term and the writ of *mandamus*

issued thereon should be further modified by striking out the allowance for costs of the appeal to the General Term.

As thus modified, the order of the General Term should be affirmed, without costs of this appeal.

BROWN, J. (dissenting). I dissent from the conclusion of the court in this case. The defense to the relator's claim for salary is that, by reason of absence from duty without leave for the term of five days, he had, from the nineteenth day of June, ceased to be a member of the police force of the city.

The section of the statute upon which this defense rests is as follows : " Any member of the police force who shall be absent from duty without leave for the term of five days, shall, at the expiration of said five days, cease to be a member of the police force." This provision is contained in chapter 755, Laws of 1873, section 5, which is entitled " An act supplemental to the act entitled ' An act to reorganize the local government of the city of New York,' passed April 30, 1873." This statute relates wholly to the police force of the city, and is supplemental to article 7 of chapter 335 of the Laws of 1873. Article 7 relates generally to the organization and discipline of the police force, and, among other things, provides for a board of commissioners, to be known as police commissioners, who shall appoint the police force. It then provides, section 41, " that the government and discipline of the police department shall be such as the board may prescribe, but members of the police force shall be removable only after written charges shall have been preferred against them, and after the charges have been publicly examined into, upon such reasonable notice to the person charged, and in such manner of examination as the rules and regulations of the board of police may prescribe."

Section 47. " No member of the police force, under penalty of forfeiting the salary or pay which may be due to him, shall withdraw or resign, except by permission of the board of police. *Unexplained absence without leave* of any member of the police force for five days shall *be deemed and held to be a resignation of such member and accepted as such.*"

Section 55. " The board of police shall have power, in its discretion, on conviction of a member of the force of any legal offense or neglect of duty    *    *    *    or *absence without leave,* *    *    *    to punish the offending party by reprimand, for-- feiting pay for a specified time    *    *    *    *or dismissal from the force."*

Thus stood the law on the subject under consideration from April 30, 1873, until the enactment of the supplemental law on June thirteenth of the same year. *Absence from duty, without leave,* for any period of time, was an offense for which the offender might be tried, and upon conviction punished by reprimand, fine or dismissal from the force, and *unexplained absence without leave for five days,* was to be deemed a resig- nation and accepted as such. The latter offense was made a more severe one than the former, and was visited with a more severe penalty.

Section 5 of the supplemental act must be read in connec-- tion with these provisions. The several sections quoted are *in pari materia,* and the legislature intended to supplement the old law by the new provision. But if this provision is to be construed as relating to a voluntary absence only, and not to an involuntary or enforced absence, it will be found that the new provision is mere susplusage and adds nothing to the old law. Clearly, under the first act, no member of the force, if absent for a period less than five days, could be removed except after trial and judgment of the board, and in case of absence for a period of five days or more, whether or not such absence should be deemed and held to be a resignation, would depend on the explanation of the absentee to his superior officer. This would involve examination and evi- dence, and the determination of the fact as to whether the explanation was sufficient and satisfactory, and would, there- fore, necessitate a trial and judgment.

It thus appears, I think, that under the principle act no member of the force could be removed except after trial, and this involved the preferment of charges and reasonable notice thereof to the accused and a public examination. If, now,

section 5 of the supplemental act is to be construed to refer to voluntary absence only, what has. been added to the prior law or of what force is the later enactment? Involuntary absence is explainable absence, but this offense is covered by the first act, and those guilty of it may, under its provision, be removed from the force. This construction must, therefore, be rejected as giving no effect to the manifest intention of the legislature to alter the first law.

That the legislature intended to add something to the law is obvious, and I think they have expressed their intention so clearly that the meaning is plain.

Under the first act, as I have shown, there would necessarily be dismissal by the slow process of preferment of charges and trial, but, intending to remove the necessity of a trial and make absence for the period stated, itself work a destruction of membership of the force, it was enacted in plain and unambiguous language that a member of the force who should be absent for five days without leave " *at the expiration of said five days should cease to be a member of the police force.*" No written charges or trial or conviction by the police board is made necessary to accomplish that result, but at the end of the fifth day of absence the absentee ceases, *ipso facto*, to be a member of the force. Absence works its own penalty, and the law executes itself. No other construction will harmonize the two acts and give effect to all the provisions on this subject. The omission in the supplemental act of the word " *unexplained,*" and the provision that the absentee should at the expiration of five days " *cease to be a member of the force*" in place of that contained in the principal act, *that absence should be held to be a resignation of such absentee*, indicates clearly to my mind, the intention of the legislature to make " absence " of itself work a dissolution of membership in the force. Section 5 of the supplemental act is plainly a substitute for the provision relating to unexplained absence in section 44 of the principal act. The two provisions cannot stand together and the later must prevail.

This view of the law has further confirmation by section 273,

chapter 410, Laws of 1882, known as the consolidation act, where it appears that the legislature have, to a limited extent, restored the provisions of the first law of 1873, and provided that "*unexplained absence*  *  *  *  for five days shall be deemed and held to be a resignation, and the member *so absent shall at the expiration of said period* cease to be a member of the police force." Whether under this provision an absentee would be entitled to a trial or whether the law executes itself is not now necessary to be determined.

Public policy also dictates that this construction should be placed upon the law. The police force of the city is a semi-military organization. Its efficiency can be maintained only by discipline of the strictest character. The numbers of the force and the power to increase it is limited. It watches over a large territory and the maintenance of order throughout the city demands from each member his presence at his post. Absence from duty without leave would be an offense which, more than all others, would impair its efficiency. Mindful, doubtless, of the necessity of strict discipline among its members, the legislature has seen fit to prescribe that absence for a given period without leave shall forfeit the absentee's position on the force. This rule is the law of the police officer's being, under which he enlists. The state has said to him, in substance, if you are absent from your post at any time for five days, you cease to be an officer at the expiration of that period. No matter what reason may exist, the fact of absence removes you from the force. And is not this rule, in view of the constant vigilance necessary to protect the property and inhabitants of the chief city of the nation, a reasonable and proper one? Suppose sickness should break out among the officers of the force disabling many from the performance of their duty, and some emergency should arise requiring the service of all the members of the force, would not the police commissioners have the right to say to the sick, we will not give you leave of absence, the public interests will not permit, we must have your service or fill your place with others? I think such power should exist. In other words,

that the police board should have power at any moment to increase the force to the limit allowed by law, but under any other construction of the statute under consideration many officers might be absent from duty, from causes over which they had no control, and the city be compelled to do without their service and the police board be powerless to supply their places.

The board, under section 3, chapter 755, Laws of 1873, have power, by a unanimous vote, to restore a member who has been dismissed from the force, and under this provision no substantial hardship can befall any member under the construction I have given the law.

I think the judgment should be reversed, and the proceedings dismissed, with costs.

POTTER, BRADLEY and VANN, JJ., concur with PARKER, J.; FOLLETT, Ch. J., and HAIGHT, J., concur with BROWN, J., dissenting.

Order modified as directed in the prevailing opinion, and affirmed as modified.