THE PEOPLE OF THE STATE OF NEW YORK ex rel. FREDERICK WOHL-
FARTH, Respondent, *v.* BERNARD J. YORK and Others, as Police
Commissioners of the City of New York, and Comprising the
Police Board of said City, Appellants.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. ROBERT WILLIAMS,
Respondent, *v.* BERNARD J. YORK and Others, as Police Commis-
sioners of the City of New York, and Comprising the Police
Board of said City, Appellants.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. HENRY KUHLER,
Respondent, *v.* BERNARD J. YORK and Others, as Police Commis-
sioners of the City of New York, and Comprising the Police
Board of said City, Appellants.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. MICHAEL DELANEY,
spondent, *v.* BERNARD J. YORK and Others, as Police Commis-
sioners of the City of New York, and Comprising the Police
Board of said City, Appellants.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. FRANK WINKLER,
Respondent, *v.* BERNARD J. YORK and Others, as Police Commis-
sioners of the City of New York, and Comprising the Police
Board of said City, Appellants.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. ANTHONY KUTGER,
Respondent, *v.* BERNARD J. YORK and Others, as Police Commis-
sioners of the City of New York, and Comprising the Police
Board of said City, Appellants.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. CHARLES DOCKEN-
DORF, Respondent, *v.* BERNARD J. YORK and Others, as Police
Commissioners of the City of New York, and Comprising the
Police Board of said City, Appellants.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOHN KRAEMER,
Respondent, *v.* BERNARD J. YORK and Others, as Police Commis-
sioners of the City of New York, Comprising the Police Board
of said City, Appellants.

*New York city — members of the police force of the village of College Point, appointed
after the passage of the Greater New York charter, and before January 1, 1898,
are entitled to positions on the police force of the new city.*

Members of the police force of the village of College Point, Queens county, whose
appointment was made prior to January 1, 1898, but subsequent to the passage

of the Greater New York charter, section 280 of which provides that "the cap-tain and each sergeant, roundsman and patrolman of the police force of the county of Richmond, or of any town or village in that part of the county of Queens included in the city of New York, as hereby constituted, shall be mem-bers of the police force specified in section 276 of this act," are entitled to posi-tions on the police force of the city of New York, although the language of section 280 differs from that used in the preceding sections of that act, by which the police forces of the city of Brooklyn and Long Island City are transferred to the police force of the new city, in that it does not include the words "who shall be such when this charter takes effect," as by section 1611 of the Greater New York charter it is provided that "for the purpose of determining the effect of this act upon other acts and the effect of other acts upon this act, this act shall, except as in this section is otherwise provided, be deemed to have been enacted on the first day of January, eighteen hundred and ninety-eight," and, conse-quently, the Greater New York charter, in so far as it affected the police force, or operated to repeal the charter, of the village of College Point, must be deemed to have been enacted on the 1st day of January, 1898.

*Semble,* that the various towns and villages incorporated into the city of New York by the Greater New York charter, had power to increase their police force, acting within the limits of their charters, until such charters were repealed by section 1615 of the Greater New York charter, which provided that "upon the taking effect of this act on the first day of January, one thousand eight hundred and ninety-eight, all the municipal and public corporations, except counties which, by this act, are consolidated with the corporation heretofore known as the mayor, aldermen and commonalty of the city of New York, shall cease and determine, and their powers, to the full extent of legislative power in this behalf, are respectively devolved upon the corporation of the city of New York as herein constituted, and the municipal assembly thereof, unless otherwise expressly provided in this act or by law."

APPEAL by the defendants, Bernard J. York and others, as police commissioners of the city of New York, and comprising the police board of said city, from an order of the Supreme Court, made at the Queens County Special Term and entered in the office of the clerk of the county of Queens on the 2d day of May, 1898, granting the application of the relator, Frederick Wohlfarth, for a peremptory writ of mandamus requiring the appellants to restore the relator, Frederick Wohlfarth, to the position of captain on the police force of the city of New York; to assign him a place for the performance of of his duty as a member of said police force; to certify his name and office upon the payroll of the said police department, and to pay him his salary and compensation as a captain of police from the 1st day of January, 1898, at the rate of $1,000 per year.

The facts and questions involved in the seven cases following the Wohlfarth case are similar to those in the Wohlfarth case, and the eight cases were argued together upon the same record. ·

*John Whalen, Corporation Counsel* [*James T. Malone* and *John B. Mayo* with him on the brief], for the appellants.

*John J. Gleason*, for the respondents.

WOODWARD, J. :

. The relator, Frederick Wohlfarth, was appointed a member of the police force of the village of College Point, in the county of Queens, at a meeting of the board of trustees of said village on the 11th day of June, 1897. At a subsequent meeting, held June seventeenth, he was appointed captain of police, and his salary was fixed at $1,000 per year, the term of office to commence on the first day of July following. A sergeant and six patrolmen were appointed at the same time, the sergeant to have a salary of $900 per year, and the patrolmen $800 per year each. The facts are the same in each case, in so far as the law is concerned, and the eight cases were submitted to this court together. The village of College Point was organized under the provisions of chapter 259 of the Laws of 1867, and the relator avers " that under and pursuant to the charter of the village of College Point aforesaid, and particularly under and pursuant to subdivision 13 of section one of title 3 of chapter 259 of the Laws of 1867, and the acts amending said charter, the trustees of the village of College Point were empowered to organize and maintain a competent police ; that the metropolitan police district, as it existed, or was claimed to exist in 1867, was subsequently abolished by law. That under and by the act, chapter 336 of the Laws of 1897, passed April 23, 1897, entitled ' An act to amend chapter two hundred and fifty-nine of the Laws of eighteen hundred and sixty-seven, entitled An act to incorporate the village of College Point, in Queens county,' and the acts amendatory thereof, amendments were made to the charter of said village of College Point, and one of such amendments, to wit, the amendment to title 5 of chapter 259 of the Laws of 1867, added an additional section, numbered 4, thereto, as follows : ' Sec. 4. In addition to the sums of money authorized by taxation in said village of College Point, the board of

trustees of the said village shall have power to raise by taxation upon the taxable inhabitants of the village, and the property therein liable to taxation in the year eighteen hundred and ninety-seven, and annually thereafter, *a sum of money not exceeding four thousand dollars* in any one year, and such sum of money so raised, or so much thereof as may be necessary, shall be applied in the year eighteen hundred and ninety-seven, and annually thereafter, to the payment of the salaries and compensation of a police force, which shall be organized in said village by the trustees thereof, and the expenses connected with maintaining such police force;' " etc. The Special Term held that there were no denials of these and other material averments sufficient to raise an issue of fact, and the issue of law is thus presented, whether under the provisions of the Greater New York charter (Laws of 1897, chap. 378) the relator is entitled to a position as a member of the police force of the city of New York, together with his salary during the time that he has been denied such position by the defendants. There is no doubt that the relator was duly appointed captain of the police force of the village of College Point, or that the village of College Point had the right, in the exercise of its powers as a municipal corporation, to make such appointment, and to fix the salaries of its police officials. These are powers inhering in a municipal corporation, and the mere fact that the Legislature enacted that the village of College Point might raise a further sum of $4,000 to be used for police purposes, did not restrict the board of trustees in making appointments to the police force, nor in fixing the compensation of the members of such force. (Dillon Mun. Corp. [1st ed. 1872] § 55.)

Section 280 of the Greater New York charter provides that " the captain and each sergeant, roundsman and patrolman of the police force of the county of Richmond, or of any town or village in that part of the county of Queens included in the city of New York, as hereby constituted, shall be members of the police force specified in section 276 of this act." Section 276 provides for the organization of the general police force of the city of New York, as constituted by the act, and the subsequent sections transfer the police forces of the several municipalities within the territory of the Greater New York to the jurisdiction of the police department thus created. A casual reading of the provisions of section 280 would seem to indi-

cate that the relator, having been duly constituted a member of the police force of the village of College Point, which is "in that part of the county of Queens included in the city of New York, as hereby constituted," is entitled to a position in the police force of the city of New York, but the defendants urge that the language of section 280 differs from that used in the preceding sections, in that it does not include the words "who shall be such when this chapter takes effect," and that, therefore, it must be differently construed. "It will be observed," says the learned counsel for the defendants, "that from this section 280 of the Greater New York charter, which is the section upon which the relator relies, are omitted the words, 'when this chapter takes effect,' but in respect to the police forces of the city of New York, of the city of Brooklyn and of Long Island City, respectively, they are studiously inserted and preserved, evidencing an unmistakable intention, upon the part of the framers of the statute and of the Legislature, to differentiate the transference of the police forces of those cities to the police force of the city of New York, as constituted by the statute, from that of the police force of Richmond county and towns or villages in the county of Queens included in the city of New York, by distinguishing between the respective times at which membership in the old force must exist in order that its members could be transferred, according to the provisions of the said several sections, to the new police force. In the instance of the cities mentioned, such membership must exist 'when this chapter takes effect.' In the instance of Richmond county and the towns or villages of the county of Queens, included in the city of New York, such membership must exist, in the absence of any specific provision to the contrary, at the only other time possibly consistent with the intention of the Legislature — to wit, the date of the passage of the act — May, 1897." In making his application of this rule the learned counselor says that "The affidavit of the relator does aver that, under the charter of the village of College Point, chapter 259 of the Laws of 1867, and the act amendatory thereof, the trustees of said village 'were empowered to organize and maintain a competent police,' but nowhere does it appear that such power was exercised by them at any time prior to June 11, 1897, about thirty years after the passage

of the said charter and subsequent to the passage of the Greater New York charter. If, then, it be conceded that no police force existed in this village prior to, or at the time of, the passage of such charter, can it be seriously argued that the Legislature intended, or could have intended, that during about the period of six months, intermediate the passage of such charter in May, 1897, and January 1, 1898, these villages or towns, or any of them, could proceed to organize within themselves such police forces as they saw fit for so short a period, and on January 1, 1898, have them transferred by operation of law to the police force of the city of New York, without question as to their fitness or other sanction than the will of such trustees ? "

Whatever might be the opinion of this court upon the ingenious argument thus presented in support of the action of the commissioners of the police board in refusing to recognize the relator as a member of the police force of the city of New York, if we were free to express an opinion, we are confronted by a provision of law directly bearing upon this point, which compels us to disagree with the conclusion suggested. Section 1611 of the Greater New York charter provides that "for the purpose of determining the effect of this act upon other acts and the effect of other acts upon this act, this act shall, except as in this section is otherwise provided, be deemed to have been enacted on the first day of January, eighteen hundred and ninety-eight. This act shall take effect on the first day of January, eighteen hundred and ninety-eight; provided, however, that where by the terms of this act an election is provided or required to be held or other act done or forbidden prior to January first, eighteen hundred and ninety-eight, then as to such election and such acts, this act shall take effect from and after its passage, and shall be in force immediately, anything in this chapter or act to the contrary notwithstanding." The charter of the Greater New York, then, in so far as it affected the police force, or operated to repeal the charter of the village of College Point, must be deemed to have been enacted on the 1st day of January, 1898, at which time the relator was a member of the police force of the village of College Point, and, under the rule laid down by the defendants, would be entitled to recognition as a part of the police force of the city of New York. While it is probably true that the Legislature did not contemplate

that the various towns and villages would materially increase their police force, there can be no reasonable doubt that these communities, acting within the limits of their charters, had a legal right to do so until their charters were repealed by operation of the Greater New York charter, which provides in section 1615 that "upon the taking effect of this act on the first day of January, eighteen hundred and ninety eight, all the municipal and public corporations, except counties, which by this act are consolidated with the corporation heretofore known as the mayor, aldermen and commonalty of the city of New York, shall cease and determine, and their powers to the full extent of legislative power in this behalf are respectively devolved upon the corporation of the city of New York as herein constituted and the municipal assembly thereof, unless otherwise expressly provided in this act or by law." If these towns and villages had the right to appoint a police force, they had, as a necessary incident to that power, the right to provide for their compensation, and where a public body, charged with the duty of controlling and paying the compensation of a police force, refuses to recognize the claims of those legally constituting such police force, we know of no objection to proceeding by mandamus to compel compliance with the law. (*People ex rel. Nugent v. Police Commissioners,* 114 N. Y. 245; *Hagan* v. *City of Brooklyn,* 126 id. 643.)

The order appealed from should be affirmed, with costs.

All concurred.

Orders affirmed, with ten dollars costs and disbursements.