### 13543.    BUNCH *v.* CITY OF MACON.

Under the charter of the City of Macon a police officer is entitled to continue as a member of the police force until suspended or removed for cause, after due notice and trial, in the manner provided by statute.

A policeman is a public officer, and is entitled to his salary as such until he is suspended or removed or the office vacated.

An office is vacated by incapacity only " from the time the fact is ascertained and declared by the proper tribunal." Civil Code (1910), § 264(4).

No such incapacity as would prevent recovery of salary by the plaintiff in this case as a police officer of the City of Macon was caused by his imprisonment for a period of thirty-one days while awaiting trial on an indictment (subsequently nol-prossed) which was based on an act done in the performance of his duty and in obedience to direct orders from his superior officers.

No suspension or removal from office, and no abandonment of the office of the plaintiff, was shown by the evidence.

Payment of salary to another did not relieve the city from liability for salary to the plaintiff, where the payment was made in paying salaries to five persons who under a temporary arrangement were elected to take the place of six imprisoned officers, including the plaintiff, no one being specifically named to succeed the plaintiff.

Without regard to whether the plaintiff was entitled to recover salary for the period of his imprisonment, he was entitled, under the facts of the case, to recover at least a part of the salary for which he was suing, the suit including salary for a period following the imprisonment, and the evidence showing that upon his release from imprisonment he reported for duty, and that he continued his efforts to resume the performance of his duties as an officer, although officials of the city refused to allow him to do so.

The court erred in granting a nonsuit.

DECIDED DECEMBER 13, 1922.

Certiorari; from Bibb superior court — Judge Malcolm D. Jones. January 19, 1922.

Certiorari was granted by the Supreme Court.

This is a suit by J. E. Bunch against the City of Macon, to recover a stated amount claimed to be due him for services and salary as a police officer of the city. The material facts alleged in the petition are substantially as follows: that on December 19, 1918, he was duly elected and appointed a police officer for the City of Macon by a civil-service commission, such civil-service commission having been created for the City of Macon in 1914 (Ga. L. 1914, p. 1021); that pursuant to such appointment he subscribed to the proper oath and assumed his duties as such policeman; that he had been at no time dismissed or discharged from his position and employment as such police officer by the civil-service commission of the City of Macon, which body alone had authority, under the provisions of the act of 1916 (Ga. L. 1916, p. 779) amending the act of 1914, to suspend or discharge him from the service of the city as such police officer, and had such authority only after due notice and public trial; that on August 16, 1920, the act creating the civil-service commission was repealed, but it was expressly provided in the repealing act (Ga. L. 1920, p. 1142) "that all officers and employees of the police and fire departments of said city, on the date of the passage of this act, shall constitute the present personnel of the said two departments;" that on the date of such repealing act petitioner was an officer of the police department of the City of Macon, and that by the express provisions of the act no member of the police force of the city could·

be dismissed unless written charges were first preferred against him and an opportunity for a trial given him; that from the date on which he was sworn in as a policeman up to the present time he had never been notified of any charge of any kind against him, either by the civil-service commission while it existed, or by the mayor and aldermen of the city, or by any committee thereof; that from December 19, 1918, to May 16, 1919, he performed his duties as such police officer, when (upon the latter date) the City of Macon, without legal cause, and through no fault of his, declined to pay him any further salary. He alleges also that the city has violated and committed a breach of its contract with him as a police officer of the city; and that although he has been since December 19, 1918, and since May 16, 1919, a member of the police force of the city, and although he has never been tried, suspended, or dismissed from his position, and although he is still a member of the police force of the city and entitled to be paid the salary and compensation fixed by the mayor and board of aldermen for such police officer, and although he has stood ready to perform his duties as such police officer, and has offered to perform any and all of such duties, and to carry out daily, weekly, and monthly his contract of service, the city has refused to pay him any sum whatsoever since May 16, 1919, and still refuses to do so, and the city has, since that date refused, and still refuses, to permit him to perform his duties as a policeman and employee of the city, and has committed a breach of its contract to pay him for his services as such officer, and without just legal cause continues to refuse to permit him to discharge his duties as such police officer and to pay him the wages and salary justly due him as such, and that by reason of said breach of contract he has been injured and damaged by the city in the sum sued for.

The evidence offered to sustain the allegations of the petition was briefly as follows: The plaintiff was a duly appointed policeman of the city, selected by the civil-service commission, and assigned to the detective department. While so employed, on May 16, 1919, he was indicted for murder and placed in jail by the sheriff of Bibb county, where he remained for thirty-one days, when he was released on bond. Immediately after his release from jail he reported to the proper city officials and stated that he was ready to resume his duties as a police officer, but his services

were refused and he was told that he could not go back to work until the charges against him were dismissed. He was assured, however, by the officials of the city that he was still a member of the police force of the city and would be put back to work as soon as the charges against him were dismissed. The act for which he was arrested and incarcerated in jail was committed in the performance of his duties as a police officer of the city and while obeying the direct and explicit orders of his superior officers. Although his services were thus refused, he nevertheless reported regularly and continuously for duty. He was in the city practically all the ·time, and when he left the city for a few days his superior officers were notified where he could be reached, so that he could return immediatedly if his services were needed. No charges were ever lodged against him by the civil service commission or by the mayor and aldermen of the city or by any committee thereof. At the time he was put in jail the detective department of the city consisted of· six men, and all six were charged with murder and placed in jail. While he and the other five detectives were in jail *five* policemen were assigned to the detective department to fill their places, and after the plaintiff and the other five detectives were released on bail such officers kept their positions as detectives, and new men were subsequently employed to take the places of these officers. Some of the other five detectives who were put in jail were afterwards put back to work as policemen by the city officials. The indictment against the plaintiff remained in the courts for approximately two years, when a nol. pros. was entered. The salary due him since the date of his incarceration in jail aggregated substantially the amount sued for in the petition.

At the conclusion of the plaintiff's evidence the court granted a nonsuit, and it is to this judgment that the plaintiff excepts.

*C. L. Bartlett, W. A. McClellan,* for plaintiff.

*Harry S. Strozier, Grady Gillon,* for defendant.

BROYLES, C. J. (After stating the foregoing facts.) The plaintiff was appointed a member of the police force of the City of Macon in 1918, and at that time the control and regulation of the city police department were under a civil-service commission created by an act of the General Assembly of Georgia (Ga. L. 1914, p. 1021). In 1916 the legislature amended that act (Ga. L. 1916, p. 779), and this amendatory act provided, among other

things, that "no member of the police or fire department of said city shall be dismissed or suspended for more than ten days, with-first having had a trial by the Board of Civil Service Commissioners, which trial shall be public, and all witnesses who may be sworn for or against the accused shall be required to testify in his presence. It shall require a majority vote of said Civil Service Commission to discharge a fireman or policeman, or to suspend him for more than ten days without pay." In 1920 this civil-service commission was abolished (Ga. L. 1920, p. 1142), and control of the police force of the city was placed in a police committee of the council. However, this last act also contained the provision that no police officer could be discharged or suspended without trial. Thus, we see that the selection, retention, suspension, and removal of the plaintiff, as a member of the police force of the City of Macon, was regulated by statute. And by the express provisions of these statutes the plaintiff, after his appointment to the police force, was entitled to continue as a member thereof until suspended or removed for cause in the manner provided and after due notice and trial. The record shows that no such trial was ever had, although the plaintiff repeatedly asked for one. In this connection Mr. Urquhart, vice-chairman of the civil-service commission, testified that the plaintiff was never tried because no charges were ever preferred against him; that the board refused to make charges; that he was never dismissed or suspended; that he was considered a member of the detective force until the commission was abolished (August, 1920), and that he so stated to the plaintiff in the presence of the other members of the commission.

However, the city contends that when the plaintiff was placed in jail, where he remained for thirty-one days, he was *incapacitated* to perform his duties, and that for this reason his relations to the city as an officer ipso facto ceased, and there could, consequently, be no continuing liability or obligation on the part of the city to pay him a salary. We cannot agree with this contention. Whether or not the plaintiff rendered any services during the time for which he claims compensation is of no vital legal import. The real question is, did the plaintiff have title to the office during the period for which he claims compensation? If he had title thereto he is due his salary, otherwise not. A policeman is a public officer (*Marlow* v. *Savannah,* 28 *Ga. App.* 368, 110 S. E. 923) ; and the

plaintiff, as such an officer, was entitled to his salary · not by force of any contract, but because the law attaches it to the office. And the plaintiff, being the incumbent, is entitled to his salary until legally suspended or removed. See, in this connection, *Coleman* v. *Glenn,* 103 *Ga.* 458 (30 S. E. 297, 68 Am. St. R. 108), and citations. See also Civil Code of 1910, § 264 (2), which declares that an office in this State is vacated by "incapacity" only "from the time the fact is ascertained and declared by the proper tribunal." No such trial was ever accorded the plaintiff. Therefore, the fact that the plaintiff was arrested and imprisoned on a criminal charge, and was for the period of his incarceration (thirty-one days) physically *incapacitated* to perform his duties as an officer, did not of itself necessarily make the office vacant nor divest him of title thereto.

While we have been unable to find any Georgia case directly in point upon this question, the rulings of the Court of Appeals of New York are persuasive authority for us to hold as we do. In the case of People ex rel. Nugent *v.* Police Commissioners, 114 N. Y. 245 (21 N. E. 421), it was held: "The relator, a patrolman of the police force of the city of New York, was arrested by his superior officer on June 13, 1879, on a charge of felony, and was imprisoned until January 17, 1880, when he was acquitted on trial. On that day he reported for duty. On January 24 he was dismissed from the force. In proceedings by mandamus to compel payment of his salary from the time of his arrest to that of his dismissal, the defendant claimed that under the provision of the act of 1873, supplemental to the city charter of that year (§ 5, chap. 755, Laws of 1873), which provides that 'any member of the police force who shall be absent from duty without leave for the term of five days shall. . . cease to be a member of the police force,' the relator's title to the office ceased on June eighteenth [thirteenth?]. *Held, untenable; that an enforced absence, caused by an unjustifiable arrest and detention, as was the case here, was not within the intendment of the statute."* (Italics ours.) See also People ex rel. Mitchell *v.* Martin, 143 N. Y. 407 (38 N. E. 460). In the instant case the plaintiff's absence from his duties was an enforced one, caused by an arrest and detention for which he was in no way to blame, for the evidence adduced shows that he was indicted, arrested, and imprisoned for the offense of

murder (which charge was occasioned by the performance of the duties of his office under specific orders of his superior officers), and that the indictment against him was subsequently nol. prossed. The evidence shows also that after being in jail thirty-one days he was released on bond and immediately reported to the proper officers of the city and demanded to be put to work, but that they declined to permit him to resume his duties as a member of the police force until the charges against him were dismissed, and announced that they would not try him or take any action in the premises, although he repeatedly demanded a trial; and that from the time that he was released from jail up to the time of the trial of this case he continued to offer his services, but was not permitted to perform the duties of his office. Clearly, therefore, the Nugent case, supra, is directly in point; and, while that case is not binding upon this court, we think it is quite persuasive authority, as it is based upon common justice and sound public policy. Suppose, for instance, that a policeman, while attempting to arrest a burglar, was forced, in order to save his own life, to shoot and kill the felon, but, before so doing, he himself was seriously wounded by the desperado, and, after being confined for weeks in a hospital, he was subsequently indicted, arrested, and placed in jail upon a charge of murder, although subsequently tried and found not guilty by a jury of his peers, would any court hold that the mere fact that the officer was *incapacitated* to perform his duties during the time he was in jail, as well as during the time he was convalescing from the wound received in the faithful discharge of his duties, would cause him to be divested of the title to his office? We think not. Such a ruling would be contrary to public policy, in that it would materially hamper every police officer in the performance of his official duties, and would not only tend to make him, consciously or unconsciously, reluctant to go into any place of danger, but would expose him to the probable or possible loss of his office from prosecution that might be instituted by the friends or relatives of any criminal whom he might be forced to kill in the discharge of his official duties.

Nor can we hold, as contended by counsel for the city, that under the law and facts of this case the plaintiff *abandoned* his office. As already suggested, the action of the court in nol. prossing the indictment against the plaintiff was tantamount to a ruling by

a court of competent jurisdiction that he was unjustly accused and unjustly imprisoned for the proper performance of an official act. Surely it cannot be rightly said that under such circumstances the plaintiff's involuntary incarceration amounted to an *abandonment* of the office. In *Johnson* v. *Brooks,* 139 *Ga.* 787, 791 (78 S. E. 37), the Supreme Court, speaking through its Chief Justice, said: " We have no doubt of the right of petitioner to recover his salary as judge of the city court of Newton for the year 1911, notwithstanding under the facts of the case he discharged none of the duties of the office during that year. ' It has been often held that an officer's right to his compensation does not grow out of a contract between him and the State or the municipality by which it is payable. The compensation belongs to the office, and is an incident of his office, and he is entitled to it, not by force of any contract, but because the law attaches it to the office.' Throop on Public Officers, § 443. It follows that the rules of law relative to contracts do not apply to the official relation; and therefore the fact that an officer has not performed the duties of his office does not deprive him of the right to the salary attached thereto, provided his conduct does not amount to an *abandonment of the office.* 29 Cyc. 1422." (Italics ours.) The court further said in that case: " It follows . . that the petitioner held the office . . during the year 1911. . . unless his conduct and his failure to perform the duties of the office, in the circumstances above set forth, amounted to an abandonment of the office, as was contended to be the case by counsel for the defendant in error, who relied upon Civil Code, § 264 (7), which is to the effect that all offices in this State ' are vacated by abandoning the office and ceasing to perform its duties, or either.' This language of the code means the *wilful and voluntary forsaking or relinquishment of the office or of the right to hold the same, or a wilful and voluntary failure to perform the duties of the office,* and not a failure to discharge its duties by reason of acquiescence in the validity of a statute until it is judicially declared to be nugatory." (Italics ours.) In the instant case the plaintiff's absence was an enforced one, due solely to the discharge of his official duties, and we have no hesitancy in holding, in view of the above decision, that he did not *abandon* his office.

It is also contended by the city that inasmuch as it in good

faith paid "to a de facto officer the salary of the office, the de jure officer cannot recover" from the city, but must recover, if at all, from the de facto officer. There is likewise no merit in this contention. The evidence shows that when the six detectives, including the plaintiff, were imprisoned, only five men were then elected to take their places, and the record shows that this was only a temporary arrangement, and that no one was specifically named to succeed the plaintiff. Under these circumstances we might ask which one of the de facto officers could the plaintiff sue for his salary?

It is also urged by the city that the plaintiff "cannot recover until reinstated." However, in the brief of counsel for the city it is admitted that this court seems to have decided otherwise in the case of *Burney* v. *Mayor &c. of Boston,* 24 *Ga. App.* 7 (7) (100 S. E. 28). Moreover, the record shows that the plaintiff was never dismissed or suspended, and, therefore, he could not have been reinstated. Moreover, even granting that the plaintiff could not recover for the time during which he was in jail, he reported for work immediately after his discharge therefrom and repeatedly thereafter, and therefore he is entitled to at least a portion of the amount sued for. See, in this connection, *Duke* v. *Cason,* 25 *Ga. App.* 344 (103 S. E. 176).

The decision in *Mayor &c. of Brunswick* v. *Fahm,* 60 *Ga.* 109, relied upon by counsel for the city, is not contrary to the ruling here made. The facts of that case clearly distinguish it from the instant one. There Fahm, the clerk and treasurer of the City of Brunswick, was imprisoned on a criminal charge, and the mayor and council *dismissed* him from his office and immediately elected another person to fill out the balance of his term. A bill of indictment for forgery was found against him, but on the trial of the same he was acquitted, and he thereupon sued the city for the balance of his annual salary. It will be observed that in that case the mayor and council *dismissed* Fahm and immediately elected another person to fill his office, whereas in the instant case the plaintiff was never *dismissed,* and no other person was ever elected or appointed to take his specific office or position. Moreover, Fahm did not hold his office *under a civil-service commission,* as did the plaintiff in the instant case. Again, Fahm was not indicted and prosecuted for an act performed in good faith in connection with

his official duties, whereas in the instant case the plaintiff was indicted for an alleged act done in good faith in the performance of his official duties and in obedience to the explicit orders of his superior officers.

From what has been said it follows that the court erred in awarding a nonsuit.

*Judgment reversed. Bloodworth, J., concurs. Luke, J., dissents.*

LUKE, J., dissenting. I do not concur in the judgment of reversal in this case. The plaintiff contends that inasmuch as he was appointed a police officer by the civil-service commission for the City of Macon created by law (Ga. L. 1916, p. 779), he could not be discharged, his office declared vacant, and his salary denied him, unless he were first given a trial before the civil-service commission or the mayor and council upon some charge lodged against him for his official misconduct; that notwithstanding the fact that for thirty-one days he was incarcerated in jail, and for a great many months thereafter stood under an indictment which charged the offense of murder, he was nevertheless entitled to his salary, even though the City of Macon was without his services during his days of incarceration and abandonment of his office. The plaintiff's contention is that so long as he was not discharged by the mayor and council, after trial, from the service of the city, he would be entitled to his pay, whether he was able to function as an officer or not. I cannot agree with the contention of the plaintiff and the majority view in this case. I am not unmindful of the authorities upon which this court places the judgment of reversal. I have made diligent examination of the precedents cited, and find no case but which, in my opinion, is distinguishable upon its facts from the case here for review. The abandonment by the plaintiff of his position as an officer of the City of Macon was not at the instance of the city and was through no act of Providence, and it was through no fault or connivance of the city that the plaintiff was incarcerated in jail and was indicted for the offense of murder. The City of Macon, as a government, was entitled to the services of its officers, and the incarceration of the plaintiff in this case incapacitated him to discharge his duties as such officer, and it was proper that another be elected in his place. In my opinion, this case is four-square with the case of *Brunswick*

v. *Fahm,* 60 *Ga.* 109. In that case Fahm, the clerk and treasurer of the City of Brunswick, was placed in jail, charged with a felony. He was indicted, and the municipal government dispensed with his services and employed another. The court in that case said that, notwithstanding the fact that Fahm was afterwards acquitted, " when one in office is thrown into prison and thereby incapacitated to discharge its duties, another must be elected;" and this is what took place in the case we have here for review. The plaintiff in this case as a police officer, in my opinion, should not be permitted to recover in his suit.