## CITY OF MACON *v.* BUNCH.

1. Under the provision of the act of Aug. 16, 1916, amending the charter of the City of Macon, to wit, "That no member of the police or fire department of said city shall be dismissed, or suspended, for more than ten days, without first having had a trial by the board of civil-service commissioners," the dismissal of a city detective of Macon, without trial, and the appointment of another in his stead, on the ground of his indictment, arrest, and incarceration on the charge of murder, was illegal; and he would be entitled to recover his salary from the date of his dismissal until he was discharged after trial, and upon conviction by the board of civil service commissioners.

(*a*) The effect of said act was to make the tenure of office of a policeman or detective of the police force in the City of Macon run from the date of his appointment until his dismissal for cause after trial and upon conviction by the civil service commissioners.

(*b*) One regularly elected or appointed to an office created under a city charter, which prescribes the term of office, can not, during the term for which he was elected or appointed, be legally discharged from that office, unless removed in the manner prescribed by law.

(*c*) The discharge of a policeman or detective of the police force of Macon, in direct contravention of the charter provision of that city requiring a trial before dismissal, is a nullity; and the discharged

officer would be entitled to the salary of his office although he performed no duties of his office, especially where he stood ready to perform them.

(*d*) Where a city detective was indicted for murder on said charge, and kept in jail for 31 days to answer this charge, during which time he was prevented from discharging any of his duties as such officer, this was not such abandonment of the office, nor such ceasing to perform its duties, as would cause a vacancy in the office under the Civil Code (1910), § 264, par. 7.

(*e*) Such indictment, arrest, and confinement of such officer on said charge did not create such a necessity as would authorize his removal without trial and the appointment of another in his stead, the act of . 1916 making no such exception.

(*f*) The removal of said officer was not legal because not in conflict with the purpose of the civil-service provision of the charter of Macon.

(*g*) While payment to a de facto officer, in possession of and discharging the duties of an office, of the salary incident thereto is a defense to an action by the rightful officer to recover it, and while it is incumbent upon the de jure officer to have his title to the office established in a direct action, this rule is not applicable (a) where no one has been specifically appointed to the office in place of the rightful officer, or (b) where it is shown that the full complement of officers has not been appointed, or (c) where it is shown that the government did not in good faith pay the salary to the de facto officer.

2. *Quaere*, whether the plaintiff would be entitled to recover after the passage of the act of Aug. 16, 1920, abolishing the civil-service commission, because his office was impliedly abolished by section 5 of that act.

3. The judgment of the Court of Appeals is affirmed.

No. 3569. JULY 11, 1923. ·

Certiorari from Court of Appeals. 29 *Ga. App.* 290.

*Harry S. Strozier, H. D. Russell,* and *Grady Gillon,* for plaintiff in error.

*C. L. Bartlett* and *W. A. McClellan,* contra.

HINES, J. This case is in this court upon certiorari to review the judgment of the Court of Appeals. The facts of this controversy and the opinion of the Court of Appeals will be found in *Bunch* v. *City of Macon,* 29 *Ga. App.* 290 (115 S. E. 40).

1. By the act of Aug. 17, 1914 (Acts 1914, pp. 981, 1020), granting a new charter for the City of Macon, a civil-service commission was established for that city. By the act of Aug. 18, 1916, (Acts 1916, p. 779) the charter was amended, and in said amendment it was provided: " That no member of the police or fire department of said city shall be dismissed, or suspended, for more than ten days, without first having had a trial by the board of civil-service commissioners, which trial shall be public, and all

witnesses who may be sworn for or against the accused shall be required to testify in his presence. . . It shall require a majority vote of said civil-service commissioners to discharge a fireman or policeman, or to suspend him for more than ten days without pay." The effect of this latter act was to make the tenure of office of a policeman in said city continue from the date of appointment until dismissed or suspended. No dismissal or suspension could be for more than ten days without a trial by the board of civil-service commissioners. Suspension or dismissal of these officers under this act for a period longer than ten days was no longer left subject to the discretion of the municipal authorities. They could be dismissed or suspended for a longer period than ten days only after trial and judgment ousting them. If a policeman was suspended for ten days and in the meantime he was not tried and suspended or dismissed, his right to the possession of his office was automatically restored to him at the expiration of the ten days. When suspended or removed longer than ten days without trial, such suspension or removal would be unlawful, and he would still be a de jure policeman, and legally entitled to the office. The legal right to the office carries with it the right to the salary or emoluments thereof. The salary follows the legal title. *Mattox* v. *Board of Education,* 148 *Ga.* 577 (97 S. E. 532, 5 A. L. R. 568) ; McCue *v.* County of Wapello, 56 Iowa, 698 (10 N. W. 248, 41 Am. R. 134) ; Harding *v.* Des Moines, 193 Iowa, 885 (188 N. W. 135).

One regularly elected to an office created under a city charter, which prescribes the term of office, can not, during the term for which he was elected, be legally discharged from that office, unless removed in the manner prescribed by law. *Shaw* v. *Macon,* 21 *Ga.* 280; *Raley* v. *Warrenton,* 120 *Ga.* 365 (47 S. E. 972) ; *Wilson* v. *Dalton,* 135 *Ga.* 240, 246 (69 S. E. 163). This was the rule under the common law. When declared by statute it has double sanction. So, under a statute which declared that policemen shall hold office for four years and be subject to removal for cause only, a policeman could not be summarily removed by the police board during the term of four years for which he was appointed. State ex rel. Chapman *v.* Walbridge, 153 Mo. 194 (54 S. W. 447) ; Hallgren *v.* Campbell, 82 Mich. 255 (46 N. W. 381, 9 L. R. A. 408, 21 Am. St. R. 557). By the act of 1916 this rule

is expressly made applicable to policemen in the City of Macon. Under this statute no policeman of the City of Macon can be removed or suspended for more than ten days except after trial and conviction. If removed without such trial, he is wrongfully removed and he can recover from the city his salary for the remainder of his term. Andrews *v.* Portland, 79 Me. 484 (10 Atl. 458, 10 Am. St. R. 280); State *v.* Walbridge, supra. The discharge of a policeman without cause by one having no authority to oust him, in direct contravention of a charter provision, is a nullity, and he is entitled to the salary though he performed no duties of the office and engaged in other pursuits, he having been prevented by the marshal from performing the duties of policeman. City of Houston *v.* Estes, 35 Tex. Civ. App. 99 (79 S. W. 848). The salary of an officer is not dependent upon the discharge by him of the duties of the office. *Mattox* v. *Board of Education,* supra; *Tucker* v. *Shoemaker,* 149 *Ga.* 250 (99 S. E. 865). So it is not a good defense to the action of the plaintiff, that he did not discharge the duties of his office during the period for which he claims his salary.

We will now briefly consider the errors alleged by counsel for the city to have been committed by the Court of Appeals in its decision in this case. First, it is said "that this case is absolutely controlled by the decision of this court in *Mayor &c. of Brunswick* v. *Fahm,* 60 *Ga.* 109." We can not agree with this contention. Under the charter of Brunswick in force at the time the *Fahm* case was decided, the clerk of the council of that city was elected by the mayor and aldermen for the term of one year, "unless sooner removed from office." Acts 1872-3, p. 151. Fahm was elected clerk and treasurer for the year 1875. About September, 1875, he was prosecuted by the mayor for forgery. A true bill for this offense was found against him in November, 1875. When prosecuted he was imprisoned for some two or three weeks. He was dismissed from office, and another person elected in his stead to fill same. In the spring of 1876 he was acquitted, and he sued the city for the unpaid part of his salary for the year 1875. This court said: "In the view we all take of the case, it is unnecessary to consider and decide but one question made in the motion for a new trial, and that is, that the verdict is contrary to law. Fahm had no right, in law, to recover in the action for his salary, be-

cause the mayor and council had the right to dispense with his services, and to elect and employ another man under the facts disclosed in the record." In pursuance of this right the mayor and council dismissed Fahm. This court held that if he was regularly dismissed by the council after trial, he was concluded by the judgment. If he was dismissed without trial, the mayor and council, having under the charter of the City of Brunswick the right to remove him, this court held that the facts of the case justified them in so dealing with him. That is a very different case from the one under consideration. In the *Fahm* case, the clerk was dismissed because he was indicted for a felony, lodged in jail, could not discharge the duties of his office, and in order for the city government to function it was necessary to elect another clerk. This court held that these facts justified the mayor and council, under the power of removal given them in the city charter, in removing the city clerk and electing another in his place. There was no requirement in the charter of Brunswick for the trial of this officer before he could be removed and another elected in his stead. In the case we are considering the charter of the City of Macon required a trial before removal of a policeman and appointment of another in his place. If the plaintiff had been tried by the board of police commissioners of Macon, and removed because he had been indicted for murder and lodged in jail, for which reason he could not discharge his duties as city detective, and in order for the city government to function it had become necessary to appoint another in plaintiff's stead, such facts, under the *Fahm* case, would have justified the judgment of the board of civil-service commissioners in dismissing plaintiff and appointing another. The distinction between the *Fahm* case and this case is that in the former the mayor and council had the power to remove the city clerk without a trial, whereas in the case at bar the board of civil-service commissioners of Macon had no power to remove plaintiff without a trial, although the facts in the instant case might have been sufficient to justify their judgment of removal and appointment of another. In the *Fahm* case the question was, did the facts justify the dismissal of the clerk, and the election of another in his place? That case is not authority for the position, that, under a statute prohibiting the removal of a policeman without trial, he can be removed without trial if the facts would

have justified his removal if he had been tried. According to this contention, lynching would be justified if the facts would justify conviction of one for murder and his execution.

The second contention of the city is, " that when Bunch was put in jail a vacancy existed." It is asserted that the office of the plaintiff became vacant by reason of his indictment and arrest for murder and his lodgment in jail after arrest to answer this grave charge. It is claimed these facts constituted an abandonment of the office, or the " ceasing to perform its duties," which, under the Civil Code (1910), § 264, par. 7, created a vacancy in this office, which could be filled and was in fact filled by the board of civil-service commissioners of the city. This paragraph reads as follows: " All offices in the State are vacated by abandoning the office and ceasing to perform its duties, or either." This court has construed this language to mean " the wilful and voluntary forsaking or relinquishment of the office or of the right to the same, or a wilful and voluntary failure to discharge its duties." *Johnson* v. *Brooks,* 139 *Ga.* 787 (78 S. E. 37). It can not be said, under the facts of this case, that the plaintiff wilfully and voluntarily relinquished this office or the right to the same, or that he wilfully and voluntarily failed to discharge its duties, He failed to discharge its duties for a period of 31 days, by reason of an occurrence over which he had no control. For this reason he did not wilfully and voluntarily fail to discharge the duties of the office; and no vacancy occurred which could be filled by appointment of another. People ex rel. Nugent *v.* Police Comrs. of New York, 114 N. Y. 245 (21 N. E. 421); People ex rel. Mitchell *v.* Martin, 143 N. Y. 407 (38 N. E. 460). Certainly the question whether he had abandoned the office or ceased to discharge its duties could not be ultimately determined against him without a trial. State &c. *v.* Harrison, 113 Ind. 434 (16 N. E. 384, 3 Am. St. R. 663).

In the third place it is contended that the necessity of the situation justified the removal of the plaintiff and the appointment of one in his place. It is earnestly stressed that " government must go on," and that this necessity would justify the disregard of a plain provision of a statute, requiring a trial before removal of this city detective. To this we are unable to agree. The government could be run without a violation of this law. The board of civil-service commissioners could have suspended plaintiff

for 10 days. During that time they could have appointed some one temporarily to fill plaintiff's place, and have given plaintiff a trial as the law required. If the facts justified his removal, they could have removed him permanently, and appointed another. Thus government could have gone on.

In the fourth place, it is urged that the act of 1916, which prohibits the removal or suspension of a policeman without trial, is not applicable under the facts of this case. It is said that the purpose of laws prohibiting the discharge of officers without trial is to insure the continuance in the public service of faithful and competent officers, regardless of their political affiliations, and to make their tenure of office independent of all political considerations. For this reason it is urged that these laws do not apply in a case where the removal is clearly not made for political purposes but from the incapacity of the officer to discharge the duties of his office. If this were true, such statutes would be rendered largely nugatory. This would be adding to these statutes an exception not provided therein. The statute under consideration makes no such exception. We do not feel authorized to make such an exception ourselves, as this would be assumption of legislative power we do not possess and do not wish to exercise. The effect of such construction of the statute we are considering would be largely to destroy the purposes for which it was enacted.

Finally, it is insisted that the plaintiff can not recover, because his salary has been paid in good faith to another, de facto occupant of the office; and because there has been no judgment of a court reinstating him. It has long been a disputed question whether the payment of a salary of an office to a de facto occupant would exonerate the political body from its payment to the de jure officer. Selby v. City of Portland, 14 Or. 243 (12 Pac. 377, 58 Am. R. 307); Coe v. City of Dothan (Ala. App.), 94 So. 186. This court has followed the rule that the right of the officer to recover his salary ceases until he establishes his title to the office in a direct action, where the government in good faith pays the salary to a de facto officer holding under color of title. *Mattox* v. *Board of Education,* supra. The rule, that payment to a de facto officer is a good defense to an action by the de jure officer to recover the salary of the office, and that the de jure officer must establish his title to the office in a direct action for that purpose, applies

3

only where some one has been specifically appointed to the office in the place of the rightful officer. Gorley v. Louisville, 108 Ky. 789 (55 S. W. 886). Probably he would have to establish his title to the office, if the full complement of policemen had been appointed. Kammerer v. Louisville, 142 Ky. 848 (135 S. W. 411).

2. Whether the plaintiff would be entitled to recover after the passage of the act of Aug. 16, 1920 (Acts 1920, p. 1142), abolishing the civil-service commission of Macon, because his office was impliedly abolished by section 5 of that act, which provides " That all officers and employees of the police and fire departments of said city, on the date of the passage of this act, shall constitute the present personnel of the said two departments," is not now for decision by this court.

We are of the opinion that the decision of the Court of Appeals should be affirmed.

<div align="center">

*Judgment affirmed. All the Justices concur.*