WALTON *v.* DAVIS.

No. 12765. APRIL 13, 1939.

*Fort, Fort & Fort* and *R. S. Wimberly,* for plaintiff.
*Dykes & Dykes* and *G. Y. Harrell,* for defendant.

GRICE, Justice. H. T. Walton brought against C. M. Davis a quo warranto proceeding to try the title to the office of Commissioner of Roads and Revenue of Stewart County, created under the act approved August 20, 1927 (Ga. Laws 1927, p. 654). The respondent filed demurrers and an answer. The case was tried on the pleadings and on an agreed statement of facts. It was stipulated that Davis was elected and commissioned for the term beginning January 1, 1937, and ending January 1, 1941; that he qualified by giving the bond and taking the oath, and was holding the office under this commission; that Walton was elected on January 10, 1939, and commissioned on January 12, 1939, for the term beginning on that date and ending January 1, 1941; and that he took the oath and gave the bond, and was claiming the office under this commission. The grand jury at the October term, 1938, found, and in their general presentments reported, that the respondent had been wasteful and inefficient, and had wrongfully and fraudulently conducted the affairs of his office. The succeeding grand jury concurred in the previous grand jury's findings, and recommended that the office be declared vacant by order of the judge of the superior court. Such order was passed; the clerk of the superior court called a special election to fill the vacancy; the relator was elected, received his commission from the Governor, and undertook to take charge of the office, but Davis refused to surrender the office. The respondent by demurrer and answer challenged the constitutionality of section 26 of the act above referred to, under which the grand juries, the clerk, and the judge had proceeded. His insistence was that the section was in conflict with several designated provisions of both State and Federal constitutions, including the due-process clause. The provisions of said section were by the judge declared unconstitutional, null and void;

and the relator was denied title to the office. To this ruling he excepted.

Section 26 of the act of 1927 declares, in effect, that upon the finding by two successive grand juries that the said commissioner "has violated any of the terms of this act, or that he has been wasteful or inefficient," etc., his office shall be declared vacant by the order of the judge of the superior court of said county. We have here a provision for the removal of the commissioner for definite and specified causes; and the issue to be determined is whether in such a case it is a violation of constitutional guaranties to oust him from office on a finding by the two grand juries that he is guilty of the specific charges, without having given him a hearing and an opportunity to make defense.

As early as *State ex rel. Savannah* v. *Dews, R. M. Charlton,* 397, 400, 401, it was said: "That a public office is the property of him to whom the execution of its duties is intrusted is repugnant to the institutions of our country, and is at issue with that universal understanding of the community which is the result of those institutions. Public officers are, in this country, but the agents of the body politic, constituted to discharge services for the benefit of the people, under laws which the people have prescribed." That doctrine has been repeatedly recognized by this court. *City Council of Augusta* v. *Sweeney,* 44 *Ga.* 463, 465 (9 Am. R. 172); *Collins* v. *Russell,* 107 *Ga.* 423, 426 (33 S. E. 444); *Dallis* v. *Griffin,* 117 *Ga.* 408 (43 S. E. 758); *Waters* v. *McDowell,* 126 *Ga.* 807, 809 (56 S. E. 95); *Gray* v. *McLendon,* 134 *Ga.* 224 (2, 4, 7) (67 S. E. 859); *Talmadge* v. *Cordell,* 167 *Ga.* 594 (14), 599 (146 S. E. 467); *Felton* v. *Huiet,* 178 *Ga.* 311 (3, 4) (173 S. E. 660). The broad statement that a public office is not property within the sense of the constitutional guaranties of due process of law does not mean that an officer duly inducted into his office for a definite term may be deprived of its possession without a hearing, when the right to have it terminate is limited to specified causes. The statement that public office is not property means that it is not property in the sense that an officer is not denied due process of law by the abolition of his office before the expiration of his term, or by the passage of a statute limiting or reducing his compensation, and that an officer has no property right in the books and papers pertaining to his office. See 12 C. J. 1214, § 989, and cit. In *Sut-*

*ton* v. *Adams,* 180 *Ga.* 48, 69 (178 S. E. 365), the right of the State veterinarian to enjoin the physical interference with the possession of his office was considered by this court, and in the opinion it was said: "The office of State veterinarian is one with a salary attached, even if no provision has been made for its payment. While an officer has no *vested* right in the office held by him, and thus can not complain of an abolishment of such office, or of his removal or suspension, according to law, . . it does not follow that he has absolutely no financial or property interest which may be protected by a court of equity as against one who otherwise and by private means seeks to interfere with his possession and conduct of such office during his incumbency therein. Ekern *v.* McGovern, supra, [154 Wis. 157 (142 N. W. 595, 46 L. R. A. (N. S.) 796)]; Stiles *v.* Lowell, 233 Mass. 174 (123 N. E. 615, 4 A. L. R. 1365); 10 R. C. L. 339; 22 R. C. L. 378, § 10; 21 C. J. 154; 46 C. J. 932, § 28. As illustrating such interest, see *Mattox* v. *Board,* 148 *Ga.* 577 (97 S. E. 532, 5 A. L. R. 568); *Tucker* v. *Shoemaker,* 149 *Ga.* 250 (99 S. E. 865); *City of Macon* v. *Bunch,* 156 *Ga.* 27 (118 S. E. 769). In the Massachusetts case of Stiles *v.* Lowell, supra, it was said by Chief Justice Rugg, that 'The incumbent of an office carrying emolument has rights protected from assault by third persons, although as against the State itself his relation may be of a different nature.'" We do not dispute the correctness of the rule that where the tenure of an office is not prescribed by law, the power to remove is an incident to the power to appoint. *Wright* v. *Gamble,* 136 *Ga.* 376 (71 S. E. 795, Ann. Cas. 1912C, 372, 35 L. R. A. (N. S.) 866). We do not take issue with the statement that as to an office created by the legislature that body may lawfully delegate to other officers the power to remove. 12 C. J. 1019, and cit. This court is committed to the proposition that in a case where the act does not provide for removal "for definite and specified causes," the removal may be had without a notice and a hearing upon the charges preferred, and without an opportunity to defend. *Gray* v. *McLendon,* and *Felton* v. *Huiet,* supra. But none of the foregoing are decisive of the problem presented by the record in this case. Indeed, this court in *Gray* v. *McLendon,* said: "The question as to whether or not 'a public officer who has under the law a fixed term of office, and who is removable only for definite and specified causes, can not be removed without notice and a hear-

.ing on the charge or charges preferred against him, with an opportunity to make defense,' need not be considered."

The first headnote in *Coleman* v. *Glenn,* 103 *Ga.* 458 (30 S. E. 297, 68 Am. St. R. .108), reads as follows: "A statute declaring that a county officer, elected for a fixed term, 'shall be removable' from his office 'by the judge of the superior court of the county, on the address of two thirds of the grand jury, for inefficiency, incapacity, general neglect of duty, or malfeasance or corruption in office,' but which makes no provision for any notice to such officer, or for a hearing of the charge or charges against him, with opportunity to make his defense, is unconstitutional; and an order of removal based upon such a statute is a mere nullity." It was a decision by a full bench, except that Justice Little (for reasons that do not appear) concurred specially. In *Gray* v. *McLendon,* supra, attention was called to the fact that on an examination of the original record in *Coleman* v. *Glenn* it was found that neither the constitution nor any provision thereof was referred to therein. Nevertheless the petition therein asserted that the grand jury acted "without law or legal authority;" that petitioners "without due process of law," had been deprived of their office; that "said grand jury acted without law or legal authority in recommending that your petitioners be removed from office, as said grand jury failed to give your petitioners an opportunity to vindicate and defend their official acts, and your honors have removed them instanter from office without giving them a hearing." Among the prayers was one that the recommendation of the grand jury be declared inoperative and the order of the judge vacated. Notwithstanding the failure of the pleaders to point out some particular clause of the constitution with which it was claimed the legislative act was in conflict, this court in that case treated the constitutional question as having been properly raised, and in the opinion said: "It may therefore be considered as settled beyond all doubt or peradventure, that a public officer who has under the law a fixed term of office, and who is removable only for definite and specified causes, can not be removed without notice and a hearing on the charge or charges preferred against him, with an opportunity to make defense. It follows necessarily that a statute providing for the removal from office of such an officer for inefficiency, incapacity, neglect of duty, or other cause, and which makes no provision for giv-

ing him notice, or for allowing him to be heard in his defense, is contrary to the constitutional guaranty which declares that no person shall be deprived of life, liberty or property without due process of law. See Kennard v. Louisiana, 92 U. S. 480 [23 L. ed. 478]; Foster v. Kansas, 112 U. S. 201" (5 Sup. Ct. 8, 97, 28 L. ed. 629, 696). It may well be doubted whether the force and effect of that decision should be lessened on account of the fact that in attacking the act counsel did not, as numerous decisions of this court have held he should have done, name the particular clause of the constitution on which he relied. He pleaded that his clients had been deprived of their office "without due process of law" in that they had been removed without being given a hearing, and this court met the issue and decided that the statute was "contrary to the constitutional guaranty which declares that no person shall be deprived of life, liberty, or property without due process of law." The vital question in the instant case is governed by the ruling announced in *Coleman* v. *Glenn*. Whether controlled by that ruling or not, the pronouncement there made, stated by Presiding Justice Lumpkin to be "settled beyond all doubt or peradventure," is well justified by the authorities generally. See, besides the cases cited in his opinion, 46 C. J. 990, § 160, note in 12 Ann. Cas. 995, note in 99 A. L. R. 336; and *Edge* v. *Holcomb,* 135 *Ga.* 765, 768 (70 S. E. 644), wherein the statement is made that "If the power to remove an officer be only for cause, the courts generally hold that notice and hearing are prerequisite to removal." For the proposition that where the causes for which an official may be removed are specified in the statute, notice and hearing are essential, cases are cited in the annotated reports above referred to from the courts of last resort of twenty-six States in the American Union, with scarcely the sound of a dissenting voice.

The suggestion of counsel for the plaintiff that this case turns on the American conception of public office, that is, that public office is not property, and the holder has no property right to it, is too narrow a view of the constitutional idea. The right to be heard in respect to charges against him is one of the established principles of justice, older than this court and older than this country. They obtained here before there was a United States, or even a State government. It was the observation of Mr. Justice Matthews in Hurtado v. California, 110 U. S. 516, 531 (4 Sup. Ct. 111, 28

L. ed. 232), that "Due process of law in spite of absolutism of continental governments is not alien to that code which survived the Roman Empire as the foundation of modern civilization in Europe, and which has given us that fundamental maxim of distributive justice—suum cuique tribuere." Before the Revolution, they were here by virtue of Magna Charta. "No freeman shall be taken or imprisoned or disseised or outlawed or banished, or in any ways destroyed, nor will we pass upon him, nor will we send upon him, unless by the lawful judgment of his peers, or by the law of the land." Said Mr. Justice Field, in Dent v. West Virginia, 129 U. S. 114, 123 (9 Sup. Ct. 231, 32 L. ed. 623) : "They [the terms 'due process of law'] come to us from England, from which country our jurisprudence is to a great extent derived." "The law of the land" and "due process of law" are but similar terms. Walker v. Sauvinet, 92 U. S. 93 (23 L. ed. 678). One of the requisites of due process is that the person aggrieved shall be given notice and an opportunity to be heard before action is taken against him. Hovey v. Elliott, 167 U. S. 409, 417 (17 Sup. Ct. 841, 42 L. ed. 215) ; Wilson v. Standefer, 184 U. S. 399, 415 (22 Sup. Ct. 384, 46 L. ed. 612) ; *Riley* v. *Wright,* 151 *Ga.* 609 (107 S. E. 857) ; *Arthur* v. *State,* 146 *Ga.* 827 (92 S. E. 637) ; *Mott* v. *State Board of Examiners,* 148 *Ga.* 55 (95 S. E. 867) ; *City of Jackson* v. *Kinard,* 154 *Ga.* 692 (115 S. E. 69). See also the historical note appended to paragraph 1104 of McElreath on the Constitution of Georgia, where the history of the due-process clause is traced.

To accept an office created by legislative authority with knowledge of the fact that the holder may be ousted without cause by the appointing power, or at the will of some one to whom that power has been delegated, is one thing. To be inducted into an office for a fixed term, with the right to have the office declared vacant only for certain specified causes which concern the holder, is a far different thing. In the former, the holder is granted his commission with the proviso that he may be at any time ousted at the will of another; and he takes the office with that understanding and its tenure limited by the possibility that it may be shortened without cause. *Gray* v. *McLendon, Felton* v. *Huiet,* supra. In the latter, the right to deprive the holder of his office, its honor, and its perquisites and emoluments, is dependent upon the determination of certain facts; and before such facts are determined, he is, ac-

cording to the law of the land, entitled to notice and an opportunity to be heard. In such a case, to oust him without notice and without a hearing is to deny him due process of law, and to withhold from him rights which have been vouchsafed to freemen and which they have enjoyed almost for "time whereof the memory of man runneth not to the contrary."

There is scarcely a right more ancient than that great principle that usually insures the giving of a notice of a charge against one, and with it an opportunity to be heard. Its very source is wellnigh lost in antiquity. It will be remembered that even the Almighty himself, although His wisdom is inscrutable and all His judgments just, did not pass sentence upon Adam until He had first heard the charge against him and he was given an opportunity to make his defense. "Adam, where art thou? Hast thou eaten of the tree whereof I commanded thee that thou shouldest not eat? And the same question was put also to Eve." *Flint River Steamboat Co.* v. *Foster,* 5 *Ga.* 194, 202 (48 Am. D. 248).

*Judgment affirmed. All the Justices concur; Reid, C. J., and Jenkins, J., specially.*

REID, Chief Justice, concurring specially. I can not subscribe to the view taken in the opinion of Mr. Justice Grice that the statute in question violates the due-process clause of the State and Federal constitutions, but I am prepared to concur in the judgment of affirmance, because it is my opinion that the statute under which the removal of the commissioner was sought must be treated as contemplating notice and hearing by the grand jury before its recommendation should be made to the judge of the superior court; and that since such notice and hearing was not accorded him, the effect of the judgment below properly leaves him in the office. The legislature has the power to make any provision it may see fit in respect to tenure of public office, so long as its enactments are not expressly forbidden by the constitution, and in order to render them invalid they must come under the condemnation of some one of its provisions. The statute here under consideration does not in its terms provide for any notice and hearing, but specifies that the officer can be removed only after certain findings have been made by the county grand jury in respect to his conduct of the office. It does not forbid notice and hearing; and since undoubtedly, as so ably set forth in the opinion of Mr. Justice Grice, the

right to such a hearing, in the absence of statutory regulation to the contrary, has always been recognized, it seems to me that there is no reason to believe that the legislature, which did not undertake in terms to forbid it, intended, in making the grand jury the triors, to preclude him from these rights so long established in the law of the land. It is my view, however, that under the prevailing and overwhelming authority, not only in Georgia but throughout the country, the legislature could have withheld this right. As said in an authority quoted in the opinion, "due process" and "the law of the land" may mean very much the same thing. It is still true, however, that the due-process clause protects only *life, liberty,* and *property;* and in order to bring this public officer within its protection, the court has had to hold that there was a property right in the office-holder in respect to the office. To this I can not subscribe. *Coleman* v. *Glenn,* 103 *Ga.* 458 (supra), if it be taken in the full force of its language, sustained that view; but, as pointed out in the opinion of Justice Grice, this court in *Gray* v. *McLendon,* 134 *Ga.* 224 (supra), did not consider that that holding was required on the questions under consideration, and declined to adopt it. It seems to be clearly against the weight of authority both in Georgia and elsewhere.

JENKINS, Justice, concurring specially. It is recognized in the learned opinion prepared by Justice Grice that the incumbent has no absolute property right in the public office for which he contends. The fourteenth amendment of the Federal constitution guarantees equal protection under the law, and forbids depriving a citizen of his life, liberty, or property without due process of law. It would seem to follow, that, since the incumbent has no property right in the office, the legislature as the sovereign authority could, if it saw proper, make provision for his *arbitrary* removal; and this without any notice or trial given to the incumbent. This, too, seems to be recognized by Judge Grice's opinion. In this case, however, the State has not sought to affix to the tenure of the incumbent a provision that he might be arbitrarily removed at the will of the grand jury, but has provided for his removal only upon a finding by that tribunal of malfeasance in office, with the further provision that, upon two such successive findings being made, the incumbent shall be debarred from being a candidate in the election provided for his successor. While it is true enough that the office

does not belong to the incumbent, and, as against the sovereign, he has no property right therein, since in this case under the statute the incumbent can not be evicted save upon it being first found by the grand jury as triors that he has been guilty of malfeasance, it would seem that the legislature has not only sought to maintain its full control over an office which belongs to the sovereign, but has gone further and laid hands, not only upon the office, but upon the citizen, and has sought to deprive him of the equal protection guaranteed by the fourteenth amendment to the Federal constitution, and has sought to deprive him, without notice or hearing, of a portion of his rights and liberties as a citizen, without due process of law, and has rendered him subject to be deprived of his reputation and good name without an opportunity being given to be heard or defend himself. It is for this reason, and not because of any sort or shade of property right in the office itself, that the conclusion arrived at by the majority opinion appears sound. Agreeing as I do with almost all of the well-considered majority opinion, I can not agree to the reasoning in so far as it is based. to any extent upon the theory of a property right in the office being in the incumbent. This case, which involves the constitutionality of the act of the General Assembly, providing for the trial and removal for stated causes, but apparently without notice or hearing *as a matter of right,* essentially differs from any reasoning by this court in *Sutton* v. *Adams,* 180 *Ga.* 48 (supra), in which the power of the sovereign to remove an office-holder was in no way involved, but which merely concerned the relative rights of contestants therefor and their right and power to assert the same.