**Melvin A. SLAWIK, Plaintiff-Appellant, Cross-Appellee,**

v.

**STATE of Delaware and Pierre S. Dupont, IV, in his official capacity as Governor of the State of Delaware, Defendants-Appellees, Cross-Appellants.**

Supreme Court of Delaware.

Submitted: Jan. 30, 1984.

Decided: July 18, 1984.

Jack B. Jacobs of Young, Conaway, Stargatt & Taylor, Wilmington, for plaintiff-appellant, cross-appellee.

John A. Parkins, Jr., Chief of Appeals Division, Dept. of Justice, Wilmington, for defendants-appellees, cross-appellants.

Before McNEILLY, HORSEY and MOORE, Justices.

HORSEY, Justice:

This appeal concerns an attorney's fee award under the Civil Rights Attorney's Fees Awards Act of 1976 (the "Act"), 42 U.S.C. § 1988. Appellant challenges the adequacy of the fee award and appellee-State cross appeals contesting the grant of any award under § 1988.

Melvin A. Slawik, plaintiff-appellant, while holding the elected office of County Executive for New Castle County, was convicted in March, 1976 in the United States District Court of Delaware of making false declarations before a Federal Grand Jury in violation of 18 U.S.C. § 1623. Two days later and prior to plaintiff's sentencing, the Governor of Delaware, acting under the provisions of Article XV, § 6 of the Delaware Constitution,[1] removed Slawik from his office as County Executive, effective immediately. Six weeks after his removal from office, Slawik was sentenced in Federal Court; but following appeal, the United States Court of Appeals for the Third Circuit reversed Slawik's convictions. *United States v. Slawik, et al.*, 3d Cir., 548 F.2d 75 (1977). Slawik then filed suit for damages in Superior Court against the State of Delaware, the former Governor of Delaware, and others. Plaintiff contended that he had been deprived of a "property" interest by not being permitted to complete his full term of office as County Executive. The Superior Court granted summary judgment for the defendants, holding that Slawik was "convicted" at time of his removal from office and hence was not wrongfully removed. *Slawik v. Folsom, et al.*, Del.Super., 389 A.2d 775 (1978). On appeal, this Court reversed, ruling that Slawik's removal from office "on March 11, 1976, was invalid when effectuated, but became valid *nunc pro tunc* with the imposition of sentence on April 21, 1976." *Slawik v. Folsom*, Del.Supr., 410 A.2d 512, 514 (1979).[2]

1. *Del.Const.*, Art. XV, § 6 provides:
   "All public officers shall hold their offices on condition that they behave themselves well. The Governor shall remove from office any public officer convicted of misbehavior in office or of any infamous crime."

2. This Court added, "On [imposition of sentence], the plaintiff lost all rights to any salary and benefits of his public office that he may have previously possessed. . . .

   \*    \*    \*    \*    \*    \*

   In view of the limited scope of this appeal . . . we make no judgment as to the merits of the plaintiff's claim for the period prior to April 21, 1976. We hold, however, that on and after April 21, 1976, the plaintiff was not entitled to any salary and benefits accruing from the office

On remand, the Superior Court awarded Slawik's counsel a fee under 42 U.S.C. § 1988. Section 1988 provides that in any action to enforce § 1983, the Court may allow the prevailing party a reasonable attorney's fee as part of the costs. Finding that plaintiff Slawik had "prevailed" on the limited issue of premature removal from office, Superior Court (by unreported decision) granted Slawik's counsel a percentage of the monies recovered plus costs.[3]

Plaintiff appeals from Superior Court's denial of his attorney's claim for a fee award equaling twice the "lodestar" or market value of time expended plus the value of the time required to prosecute the fee application.[4] The State, by cross appeal, argues that Superior Court was not authorized by § 1988 to award any fees against the State defendants in the absence of either: (1) a judicial determination that appellant's federal constitutional rights had been violated; or (2) a finding that plaintiff had presented a § 1983 claim which was sufficiently substantial to support federal jurisdiction under the reasoning of *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).

The question presented is whether plaintiff's allegation of a deprivation of a Fourteenth Amendment "property" right in continuing in public office satisfies the substantiality test of *Hagans v. Lavine*. We find plaintiff to have not presented a constitutionally cognizable claim. Therefore, we reverse Superior Court's award of counsel fees to plaintiff; deny the appeal; grant the cross appeal; and hold that the Civil Rights Attorney's Fee Awards Act of 1976 does not authorize any award of fees in this case.

I

Under the so-called "American Rule," the remedy of fee shifting is ordinarily not available to a prevailing litigant absent statutory authority to award costs, including counsel fees. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).[5] Appellant seeks to invoke the congressional sanction of the Civil Rights Attorney's Fees Awards Act of 1976, 90 Stat. 2641, which provides in pertinent part:

> In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

42 U.S.C. § 1988.

Presumably to bring § 1988 into play, appellant has alleged that his removal from office by the Governor of Delaware denied him a Fourteenth Amendment "property" interest in completing his four-year term as

---

of New Castle County Executive...." 410 A.2d at 514, 518.

**3.** The Court awarded Slawik's counsel a fee of $2,407.20, plus expenses, representing 40 percent of a settlement of six weeks salary plus benefits, with interest, reached between Slawik and New Castle County officials. The New Castle County defendants were then dismissed from the suit. (After the filing of appellant's petition for fees, His Excellency Pierre S. du Pont, present Governor of Delaware, was substituted for The Honorable Sherman W. Tribbitt, Delaware's Governor at the time appellant brought suit.)

**4.** Plaintiff seeks recovery of $31,430 for services rendered exclusive of this appeal computed as follows: 227 hours × hourly rate = $12,330

"lodestar" × 2 + $6,770 [hourly rate × time prosecuting fee application before Superior Court].

**5.** We recognize the inherent power in the courts to allow attorneys' fees in particular situations, *e.g.*, the willful disobedience of a court order "... as part of the fine to be levied on the defendant," *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 718, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475 (1967); or when the losing party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons...." *F.D. Rich Co., Inc. v. United States, Industrial Lumber Co., Inc.*, 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974). However, since none of the exceptions are apposite here, we limit our inquiry to the applicability of a fee statute.

County Executive.[6] The complaint claims that this deprivation violates both 42 U.S.C. § 1983 and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Since suit is brought to enforce § 1983 rights, continues appellant, § 1988 authorizes recovery of fees for appellant's attorney.

We find appellant's argument to be flawed in two fundamental respects. *First,* any loss, however grievous, visited upon a person by the State is not, without more, sufficient to invoke the procedural protections of the Due Process Clause. *Meachum v. Fano,* 427 U.S. 215, 225, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). The determining factor is the *nature* of the interest involved, not its weight. *Board of Regents v. Roth,* 408 U.S. 564, 570–71, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972).

*Second,* § 1983 imposes civil liability only upon one

> who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the *Constitution and laws. . . .*

(emphasis added). Section 1983 does not itself *create* substantive rights. Rather, the statute provides the method for vindicating federal rights elsewhere conferred either by the United States Constitution or the federal statutes therein described. *See Maine v. Thiboutot,* 448 U.S. 1, 9–10, 100 S.Ct. 2502, 2506–07, 65 L.Ed.2d 555 (1980); *Maher v. Gagne,* 448 U.S. 122, 129 n. 11, 100 S.Ct. 2570, 2574 n. 11, 65 L.Ed.2d 653 (1980); *Baker v. McCollan,* 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2694 n. 3, 61

L.Ed.2d 433 (1979). If, however, a party "prevails" solely on an issue of State law, the question becomes whether disposition of the case on State law enabled the Court to avoid decision on "substantial" constitutional questions.[7] *See Maher v. Gagne, supra,* 448 U.S. at 128, 100 S.Ct. at 2574.

We address these points in reverse order.

## II

### A

The legislative history to § 1988 makes clear that fees may be awarded in cases where a pendent constitutional claim is raised, even if the claim on which the party prevailed is wholly statutory and is one for which fees cannot be awarded under the Act. The Report of the Committee on the Judiciary of the House of Representatives accompanying H.R. 15460 states:

> To the extent a plaintiff joins a claim under one of the statutes enumerated in H.R. 15460 with a claim that does not allow attorney fees, that plaintiff, if it prevails on the non-fee claim, is entitled to a determination on the other claim for the purpose of awarding counsel fees. *Morales v. Haines,* 486 F.2d 880 (7th Cir.1973). In some instances, however, the claim with fees may involve a constitutional question which the courts are reluctant to resolve if the non-constitutional claim is dispositive. *Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). In such cases, if the claim for which fees may be awarded meets the "substantiality" test, *see Hagans v. Lavine, supra; United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), attorney's fees may be allowed even though the

---

**6.** Slawik's term of office expired two months before filing suit.

**7.** Correlative to the substantiality doctrine is the rule that the misapplication of State law does not, *per se,* give rise to a § 1983 action and a subsequent claim for attorneys' fees under § 1988. *See Screws v. United States,* 325 U.S. 91, 108, 65 S.Ct. 1031, 1038, 89 L.Ed. 1495

(1945); *Derheim v. Hennepin County Welfare Board,* 8th Cir., 688 F.2d 66, 69 (1982). Petitioner must show a violation of a specific constitutional guarantee. Mere incantation of § 1983 is not sufficient to support an award of counsel fees. *See Smith v. Cumberland School Committee,* 1st Cir., 703 F.2d 4 (1983).

court declines to enter judgment for the plaintiff on that claim, so long as the plaintiff prevails on the non-fee claim arising out of a "common nucleus of operative fact." *United Mine Workers v. Gibbs, supra,* at 725, 86 S.Ct. at 1138. H.R.Rep. No. 94–1558, p. 4, n. 7 (1976).

The substantiality doctrine of *Hagans v. Lavine* requires that petitioner establish a constitutional claim of sufficient substance to support jurisdiction in a federal court. To that end, pendent jurisdiction is said to exist whenever: (1) there is a claim "arising under [the] Constitution, the laws of the United States, and Treaties made, or which shall be made, under their authority ...," U.S.Const., Art. III, § 2; *and* (b) that claim, coupled with the pendent State claim, comprises but one constitutional "case" that derives from a common nucleus of operative fact. *United Mine Workers of America v. Gibbs,* 383 U.S. at 725, 86 S.Ct. at 1138.

It is well settled, however, that District Courts are without power to adjudicate claims otherwise within their jurisdiction if they are "so attenuated and unsubstantial as to be absolutely devoid of merit," *Newburyport Water Co. v. Newburyport,* 193 U.S. 561, 579, 24 S.Ct. 553, 557, 48 L.Ed. 795 (1904); "wholly insubstantial," *Bailey v. Patterson,* 369 U.S. 31, 33, 82 S.Ct. 549, 551, 7 L.Ed.2d 512 (1962); or "obviously frivolous," *Hannis Distilling Co. v. Baltimore,* 216 U.S. 285, 288, 30 S.Ct. 326, 327, 54 L.Ed. 482 (1910). Here, appellant's allegation of a constitutional deprivation must not be too insubstantial to confer subject matter jurisdiction on a federal court. *See Maher v. Gagne,* 448 U.S. 122, 127, 100 S.Ct. 2570, 2573, 65 L.Ed.2d 653 (1980), *citing Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); *Luria Bros. & Co., Inc. v. Allen,* 3rd Cir., 672 F.2d 347, 357 (1982). *See also Anderson v. Redman,* D.Del., 474 F.Supp. 511 (1979).

## B

This brings us to the Fourteenth Amendment and appellant's assertion of a "property" right in his position as County Executive. The text of the Fourteenth Amendment provides in part:

Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; *nor shall any State deprive any person of life, liberty, or property, without due process of law;* nor deny to any person within its jurisdiction the equal protection of the laws. (Emphasis supplied).

It is clear that appellant satisfies two of the three traditionally recognized prerequisites of a valid due process argument: The Governor acted under color of State law; and appellant's removal amounted to a deprivation. However, the question remains whether there has been a denial of a federally protected "property" right.

### (1)

The parties acknowledge that property interests do not emanate from the Constitution but "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. An individual's interest in or entitlement to "property" thus encompasses a broad range of benefits which may assume a host of forms. The general attributes of such interests have been summarized in the following manner:

To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

*Id.*

Hence, the Supreme Court has held that welfare recipients have a constitutionally

secured interest in continued receipt of welfare benefits—an interest safeguarded by procedural due process. *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). *Compare Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (holding that an evidentiary hearing is not required prior to the termination of Social Security disability benefits). In the area of public employment, the Court has held that college professors teaching under tenure provisions, *Slochower v. Board of Higher Education of New York City*, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956), professors and staff members employed pursuant to contracts, *Wieman v. Updegraff*, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952), and police officers, *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), have interests in continued employment that are insured by due process. *See also Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). However, a state junior college professor's subjective expectancy of reemployment, not buttressed by "existing rules or understandings," *Roth, supra*, 408 U.S. at 577, 92 S.Ct. at 2709, is not a "property interest" subject to procedural due process protection. *Perry v. Sinderman*, 408 U.S. 593, 92 S.Ct. 2694 (1972).

(2)

In contrast, in cases involving the contested suspension or removal of public officials in state government, the courts—federal and state—have consistently refused to find a federally protected property right to office. In *Wilson v. North Carolina*, 169 U.S. 586, 18 S.Ct. 435, 42 L.Ed. 865 (1898), the United States Supreme Court first addressed the issue of suspension of a public official. In that case, plaintiff was elected railroad commissioner by the General Assembly of North Carolina of 1893 for a term ending April 1, 1899. In August of 1897, the Governor notified plaintiff that he had been charged with violating the Act establishing the State Railroad Commission. Plaintiff was directed to show cause why, on a named day and at the office of the Governor, he should not be suspended

from office. Plaintiff was also directed to be present in person or by counsel on the appointed day to give answer to the charges raised.

On the return date, plaintiff appeared and denied, in a written statement, the various allegations communicated by the Governor. At the meeting, plaintiff demanded that the Governor produce the evidence against him and that he be accorded the opportunity to confront his accusers and cross-examine the witnesses. The Governor refused the demand. Thereafter, plaintiff was suspended from office pursuant to the statute creating his position.

In a subsequent *quo warranto* proceeding, the North Carolina Supreme Court upheld suspension. The Court held that plaintiff, in taking office, became subject to the applicable act, including those provisions providing for the appointment, suspension, and removal of commission officials. In addressing the purpose of the suspension provision, the State Supreme Court commented:

> The duty of suspension was imposed upon the Governor from the highest motives of public policy to prevent the danger to the public interests which might arise from leaving such great powers and responsibilities in the hands of men legally disqualified. To leave them in full charge of their office until the next biennial session of the legislature, or pending litigation which might be continued for years, would destroy the very object of the law. As the Governor was, therefore, by the very letter and spirit of the law, required to act and act promptly, necessarily upon his own findings of fact, we are compelled to hold that such official action was, under the circumstances, due process of law.

169 U.S. at 592, 18 S.Ct. at 437.

Plaintiff then sought a writ of error from the United States Supreme Court to review the judgment. In considering defendants' motion to dismiss plaintiff's writ for lack of jurisdiction, the Court characterized the

controversy as one relating "exclusively to the title to a state office, created by a statute of the State, and to the rights of one who was elected to the office so created. Those rights are to be measured by the statute and by the constitution of the State, excepting in so far [sic] as they may be protected by any provision of the Federal Constitution." *Id.* Since plaintiff had raised a Fourteenth Amendment argument, the Court considered whether the State, through the conduct of its Governor, had deprived plaintiff of a property interest without the process due under the Constitution.

In rejecting the Fourteenth Amendment claim, the Court found plaintiff not to have been deprived, by reason of the Governor's actions, of any right guaranteed to him by the Federal Constitution. Mr. Justice Peckham, speaking for the Court, said: "No ... fundamental rights were involved in the proceedings before the Governor. In its internal administration the State (so far as concerns the Federal Government) has entire freedom of choice as to the creation of an office for purely state purposes, and of the terms upon which it shall be held by the person filling the office." *Id.* at 594, 18 S.Ct. at 438. The writ was then dismissed for want of a federal question sufficient to support jurisdiction in the Court:

> [T]he Federal question which he attempts to raise is so unfounded in substance that we are justified in saying that it does not really exist; that there is no fair color for claiming that his rights under the Federal Constitution have been violated, either by depriving him of his property without due process of law or by denying him the equal protection of the laws.

*Id.* at 595, 18 S.Ct. at 439.

Two years later, in *Taylor v. Beckham,* 178 U.S. 548, 20 S.Ct. 890, 44 L.Ed. 1187

(1900), the Supreme Court decided a contest over the offices of governor and lieutenant governor of the State of Kentucky. In a *quo warranto* proceeding brought under the statutes of Kentucky, the incumbent officeholders, who were the losers in an election conducted in the State's General Assembly, averred that they had been denied a right to a public office protected by the Fourteenth Amendment. The Supreme Court rejected this contention, stating:

> The view that public office is not property has been generally entertained in this country.

> \*   \*   \*   \*   \*   \*

> The decisions are numerous to the effect that public offices are mere agencies or trusts, and not property as such. Nor are the salary and emoluments property, secured by contract, but compensation for services actually rendered. Nor does the fact that a constitution may forbid the legislature from abolishing a public office or diminishing the salary thereof during the term of the incumbent change its character or make it property. True, the restrictions limit the power of the legislature to deal with the office, but even such restrictions may be removed by constitutional amendment. In short, generally speaking, the nature of the relation of a public officer to the public is inconsistent with either a property or a contract right. (citations omitted) (underlining added).

178 U.S. at 576–77, 20 S.Ct. at 900. The holding of *Taylor* was subsequently reaffirmed in *Cave v. Missouri ex rel. Newell,* 246 U.S. 650, 38 S.Ct. 334, 62 L.Ed. 921 (1918) (per curiam) and also in *Snowden v. Hughes,* 321 U.S. 1, 7, 64 S.Ct. 397, 400, 88 L.Ed. 497 (1944).[8]

8. We cannot agree with appellant that *Wilson* and *Taylor* are no longer viable in light of subsequent developments in due process analysis. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) and their progeny introduced a two-step analysis of due process. In the first step, a court must determine whether a party has a legitimate "property" or "liberty" interest. An analysis of the individual's rights under State law provides the answer to this inquiry. It is the second step—what process is due, assuming a deprivation of an

In *State ex rel. Maxwell v. Crumbaugh,* Tex.Civ.App., 26 Tex. 521, 63 S.W. 925, 927 (1901), the Texas Court of Civil Appeals summarized what may now be deemed the "majority" rule concerning the nature of public office:

> A public office is not "property," within the meaning of the constitutional provision that "no person shall be deprived of life, liberty or property without due process of law." It is a mere public agency, revocable according to the will and appointment of the people, as exercised in the constitution and the laws enacted in conformity therewith. *Moore v. Strickling* (W.Va.) [46 W.Va. 515], 33 S.E. 274, 50 L.R.A. 279. In the case cited the court in its opinion makes ... the following quotation: "It is impossible to conceive how, under our form of government, a person can own or have a title to a governmental office. Offices are created for the administration of public affairs. When a person is inducted into an office he thereby becomes empowered to exercise its powers and perform its duties, not for his, but for the public, benefit. It would be a misnomer and a perversion of terms to say that an incumbent owned an office or had any title to it."

Similarly, in *Smith v. Thompson,* Iowa Supr., 219 Iowa 888, 258 N.W. 190, 193 (1934), the Court said:

> [I]t must be conceded, as a general rule, that the relation between a public office and the people is not in the nature of a contract, and that such office has in it no element of property. It is a public trust, created for the benefit of the state, and not for the benefit of the individual citizens thereof, and the prospective emoluments of a public office are not property in any sense.[9]

The contrary view, of course, assumes that a public officeholder has a property right in his office which may not be unlawfully taken away or illegally infringed. *See Fair v. Kirk,* N.D.Fla., 317 F.Supp. 12, 14 (1970), *citing Piver v. Stallman,* Fla.App., 198 So.2d 859, 862 (1967).

(3)

Whether in Delaware a public officer has a constitutionally cognizable "property" interest in his elected post is a question of first impression for this Court. Having considered the various federal and state decisions, we today hold that a public officer in this State takes his position under the aegis and for the benefit of the public, subject to suspension or removal by any constitutionally permissible means. The office is in the nature of a public trust created to serve the public interest and not the private advantage of the individual officer.[10] As such, the officer remains in pub-

entitlement—that the Court emphasized in the above-mentioned cases. The source of this inquiry is unquestionably federal law. Thus, contrary to appellant's contention, the rationale underpinning the early decisions is fully consistent with and unaffected by the Court's subsequent due process cases.

**9.** This rule has been followed most recently in *Tarrant County v. Ashmore,* Tex.Supr., 635 S.W.2d 417 (1982). It also represents the majority position in other jurisdictions. *See, e.g., Burks v. Perk,* 6th Cir., 470 F.2d 163 (1972); *Cosby v. Moore,* Ala.Supr., 65 So.2d 178, 181 (1953); *Katz v. Brandon,* Conn.Supr., 156 Conn. 521, 245 A.2d 579 (1968); *Kirkpatrick v. King,* Ind.Supr., 228 Ind. 236, 91 N.E.2d 785, 788–89 (1950); *State ex rel. Hall v. Vaughn,* Mo.Supr., 483 S.W.2d 396, 397 (1972) (en banc); *Isola v. Borough of Belmar,* N.J.Super., App.Div., 34 N.J.

Super. 544, 112 A.2d 738 (1955); *Lanza v. Wagner,* N.Y.Ct.App., 11 N.Y.2d 317, 229 N.Y.S.2d 380, 384, 183 N.E.2d 670, 673 (1962); *Simmons v. Elizabeth City,* N.C.Supr., 197 N.C. 404, 149 S.E. 375, 376 (1929); *Wright v. City of Florence,* S.C.Supr., 197 N.C. 404, 93 S.E.2d 215, 220 (1956). *See also* Annot., 172 A.L.R. 1366 (1948); 99 A.L.R. 336 (1935); 63A Am.Jur.2d *Public Officers and Employees,* § 8 (1984).

**10.** Today's holding does not suggest that a duly elected officer has no financial or "property" right to be protected against interference by parties not acting under color of statutory or constitutional authority. These rights, however, more properly give rise to claims under State tort law rather than actions under the United States Constitution. *See, e.g., Walton v. Davis,* Ga.Supr., 188 Ga. 56, 2 S.E.2d 603, 604 (1939); *State ex rel. Ryan v. Norby,* Mont.Supr., 118

lic service at the sufferance of the people. Removal is delimited, as a general rule, by the Constitution and laws of the State creating and defining his office. However, there is no legitimate claim of "property" within the sense of the Fourteenth Amendment. Looking to the nature of public office, then, we find no infringement of a property right within the intendment of the Due Process Clause. *Roth*, 408 U.S. at 570–71, 92 S.Ct. at 2705.

### III

Although we here decide that an officer's interest in his elected post is not "property" in the constitutional sense, we acknowledge the Supreme Court's pronouncement in *Roth* that procedural due process extends to anything to which a person may assert a legitimate claim of entitlement. *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709. Relying thereon, appellant argues that procedural due process required that he not be "summarily removed from office without being afforded an opportunity to present his position in a reasoned way to the Governor, with the assistance of counsel, after being afforded a reasonable opportunity to prepare." Under the present circumstances, however, we are convinced that the procedures urged by appellant were not constitutionally prescribed.

A rudiment of procedural due process is the right to receive notice and to be heard "at a meaningful time and in a meaningful manner," *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965), prior to the deprivation of a protected interest. The length and resultant severity of a deprivation is but one factor to be weighed in determining the proper form of hearing and "is not

decisive of the basic right" to be heard. *Fuentes v. Shevin*, 407 U.S. 67, 86, 92 S.Ct. 1983, 1997, 32 L.Ed.2d 556 (1972). Also, it is established that the Due Process Clause does not require a trial-type hearing in every conceivable instance of governmental impairment of private rights. *Cafeteria Workers v. McElroy*, 367 U.S. 886, 894, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). At a minimum, though, due process requires *some* kind of notice and hearing as a preface to curtailment of constitutionally secured property interests.[11]

Recognizing a *de minimis* level of infringement for which the Constitution does not provide redress, "[t]he question remains what procedure is due." *Morrissey v. Brewer, supra* at 481, 92 S.Ct. at 2600. *See Goss v. Lopez*, 419 U.S. 565, 577, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1975). To begin, the availability of common law remedies for abuse often obviates the need for advance procedural safeguards. *Ingraham v. Wright*, 430 U.S. 651, 675, 97 S.Ct. 1401, 1414, 51 L.Ed.2d 711 (1977). Whether in this case the traditional remedy for premature removal constitutes due process of law hinges on a consideration of three distinct factors: *first*, the private interest that will be affected; *second*, the risk of an erroneous deprivation of such interest and the probable value, if any, of additional or substitute procedural safeguards; and *finally*, the State interest, including the function involved, and the fiscal and administrative burdens that the additional or substitute procedural requirements would en-

---

Mont. 283, 165 P.2d 302, 304 (1946); *Carver v. Wheeler County*, Tex.Civ.App., 118 Mont. 283, 200 S.W. 537, 538 (1918).

**11.** To the extent due process requires some form of pre-termination hearing as a matter of

constitutional right, the Supreme Court has held, on only one occasion, that a hearing approximating a judicial trial is necessary. *Goldberg v. Kelly*, 397 U.S. 254, 266–71, 90 S.Ct. 1011, 1019–22, 25 L.Ed.2d 287 (1970) (termination of welfare benefits).

tail. *Mathews v. Eldridge, supra,* 424 U.S. at 335–36, 96 S.Ct. at 903.

Appellant's interest here is the continuation in public office pending an evidentiary hearing establishing official misconduct. The purpose of requiring a hearing prior to removal is to avoid "unfair or mistaken" findings of wrongdoing by the individual charged. *Goss v. Lopez,* 419 U.S. at 579, 95 S.Ct. at 738. The "fairness" concern of procedural due process, though, speaks to the risk of error inherent in the *truthfinding* process only. "[F]airness can rarely be obtained by secret, one-sided determination of facts decisive of rights." *Joint Anti-Fascist Committee v. McGrath,* 341 U.S. 123, 170, 71 S.Ct. 624, 647, 95 L.Ed. 817 (1951).

█ It is not contended by appellant that his removal was improper due to "unfairness" in the trial proceeding before the District Court. Appellant instead complains that the Governor deprived him of procedural due process by removing him from office without first having obtained an advisory opinion from this Court as to the legality of the removal.[12] As a result, appellant argues that the absence of procedural due process increased the possibility of wrongful removal and thereby deprived him of his Fourteenth Amendment "property" interest.

The law is to the contrary. *First,* the usual rule has been that where only property rights are involved, "mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for ultimate judicial determination of the liability is adequate." *Phillips v. Commissioner,* 283 U.S. 589, 596–97, 51 S.Ct. 608, 611, 75 L.Ed. 1289 (1931). *Second,* appellant premises his argument on an issue of law; yet, "due process does not require an evidentiary hearing as a prerequisite to a valid determination of a question of law." *N.L.*

*R.B. v. Sun Drug Co.,* 3rd Cir., 359 F.2d 408, 415 (1966). *Finally,* it has been recognized that either the necessity of prompt action by the State or the impracticality of providing a meaningful pre-deprivation hearing, coupled with the availability of post-deprivation process to assess the legality of the official action, may satisfy the requirements of procedural due process. *See Parratt v. Taylor,* 451 U.S. 527, 541, 101 S.Ct. 1908, 1916, 68 L.Ed.2d 420 (1981).

Balancing the parties' respective interests against these precedents, we find the State's interest in speedy removal to plainly outweigh any need by appellant for additional procedural safeguards. *See Mathews v. Eldridge, supra.* Appellant had his full "day in court" and was removed under the authority of a valid legislative enactment. Furthermore, sound public policy demands that a State's Chief Executive act expeditiously when commanded to do so by law. "[A] public official found guilty of a prohibited act should not be permitted to continue in office too long thereafter ... because of the vital need for the public trust and confidence in public officers...." *Slawik v. Folsom,* Del.Supr., 410 A.2d at 518.

In our opinion, the possibility of a premature removal and consequent deprivation was eclipsed by the need for immediate action by the State and appellant's right to recover damages in a suit at law after the incident. Any incremental benefit which would flow from the imposition of a pre-removal hearing could not reasonably justify the additional cost and expenditure of time which the procedures urged by appellant would entail. *Mathews v. Eldridge, supra.* Moreover, appellant did not assert his "property" claim until after his term of office had expired. Hence, any risk of abuse by the State was minimal and was adequately protected by appellant's com-

---

**12.** Appellant claims a further violation of due process in the Governor's denial of appellant's request for a three-day "grace period" within which to consult his attorney.

mon-law right to an injunction and his right to post-termination judicial review.

For the foregoing reasons, we find appellant's allegation of a denial of his right to procedural due process insufficient to meet the substantiality test of *Hagans v. Lavine*. Having so found, we do not reach appellant's substantive due process claim. *See New Castle-Gunning Bedford Education Ass'n v. Board of Education*, D.Del., 421 F.Supp. 960 (1976).[13]

In the absence of a "substantial" constitutional basis for his § 1983 claim, appellant may not recover counsel fees under § 1988. The § 1988 fee award Order of Superior Court is therefore reversed and set aside.

---

**13.** The Court in *Gunning-Bedford* wrote:

Because "the constitutional right to 'substantive' due process is no greater than the right to procedural due process," [citations omitted] it follows from the Court's rejection of plaintiffs' procedural due process claim that plaintiffs' substantive due process rights have not been violated. *Id.* at 965.